809 F.2d 1406
 James W. LEE; Ralph A. Eklund; Cora Carr; Plaintiffs-Appellants,
v.
UNITED STATES of America; Secretary of the Interior;
Director, Bureau of Land Management; Eklutna,
Inc.; Cook Inlet Region, Inc.,
Defendants-Appellees.
 No. 86-3651.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 6, 1987.
Decided Feb. 9, 1987.
 
 Steven P. Oliver, Anchorage, Alaska, for plaintiffs-appellants.
 David P. Wolf and Diane Smith, Anchorage, Alaska, and Edward J. Shawaker, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before EUGENE A. WRIGHT, JEROME FARRIS and ROBERT R. BEEZER, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Lee, Eklund, and Carr claim that the Secretary of the Interior gave lands that rightfully belonged to them to two Native American groups. On a motion for summary judgment, the district court did not consider whether Lee, Eklund, and Carr actually had, or should have had, title to the disputed lands. It found that even if they did have title, they had no cause of action for return of the lands (or monetary compensation) against either the United States or the Native groups. We make no ruling on the appropriateness of this approach since the record indicates that under applicable statutes of limitations, Lee, Eklund, and Carr have failed to bring a timely suit. We therefore affirm the grant of summary judgment.
 
 FACTS
 
 2
 In 1950 the Federal Power Commission, acting under the Federal Power Act, set aside certain lands in the Eagle River Valley, near Anchorage, Alaska, as a possible site for future power projects. In 1952, at the request of the Bureau of Land Management, the Power Commission made a determination that the lands would not be "injured or destroyed for the purposes of power development by location or entry under the public land laws." Following that determination, the land could have been declared open to homesteading and other entry, but the Secretary of the Interior never restored the lands to the public domain.
 
 
 3
 In 1957 Lee, Eklund, and Carr each located on lands in the Eagle River Valley that included areas classified under the Power Act, with the expectation of taking title under the homesteading laws.[1] They had been told by the Bureau of Land Management that they could place homestead claims in the Valley. At the time, the region had not been surveyed, and the limits of the classified areas were not defined. The Power Commission advised homesteaders that classified areas were not available for homesteading until they were restored to the public domain by the Bureau of Land Management. Lee, Eklund, and Carr nevertheless proceeded to make some use of lands that were later determined to be within the powersite classification. The parties differ as to whether the entry upon and cultivation of classified areas by each of the three homesteaders was sufficient to create title under the homesteading laws.
 
 
 4
 In 1959, Lee, Eklund, Carr, and other homesteaders in the region sent a letter to the Secretary of the Interior pointing out that they were prevented from occupying the still unsurveyed classified lands even though the Power Commission had determined that they could be made available to homesteading. The letter asked the Secretary to "clarify" the situation, and let them know "what is going on." The Secretary's written reply informed the homesteaders that specific determinations would have to await the completion of an engineering survey, but stressed that the classified areas were not open to entry. It stated further that the Secretary had no intention of revoking the powersite classification, and that, in the event that it was revoked, a preference right to select the powersite lands might go to other groups.
 
 
 5
 In 1961 the Bureau of Land Management recorded its survey and issued final decisions rejecting the homestead applications of Lee, Eklund, and Carr insofar as they conflicted with the powersite classification. Lee, Eklund, and Carr continued to argue with the Bureau over the sufficiency of the proofs of their homestead entries and the extent of their rightful holdings until 1964, when they received patents to all of the lands they claimed outside of the powersite classification. The United States contends that the final patenting of lands to Lee, Eklund, and Carr in 1964 was a compromise in which doubtful issues of proof of entry upon unclassified lands were resolved in their favor in exchange for their relinquishing any claims to classified lands. The United States argues that Lee, Eklund, and Carr are estopped from claiming classified lands now. Lee, Eklund, and Carr contend that there is no evidence to indicate that the patenting of lands in 1964 was a compromise.
 
 
 6
 In 1971 Congress passed the Alaska Native Claims Settlement Act, 43 U.S.C. Secs. 1601-1641. In 1979 the formerly classified lands were patented to two Native American corporations, Eklutna, Inc. and Cook Inlet Region, Inc.
 
 
 7
 Following these conveyances, Lee, Eklund, and Carr each filed suit against the United States and the Native American corporations. In their amended and consolidated complaint, they claim that the disputed lands were restored to the public domain by the Power Commission's "no injury" determination, and that they gained title under the homesteading laws when they located on the lands in 1957. Alternatively, they argue that section 24 of the Power Act required the Secretary of the Interior to declare the lands open to homestead entry following the Power Commission's determination, and to recognize their title under the homesteading laws. They argue that they should now be placed in the position they would have been in if the Secretary had followed the law. On the assumption that they have title to the disputed lands, or at least that they should have been given title, Lee, Eklund, and Carr contend that:
 
 
 8
 1) They should have received patent to the lands under section 22(b) of ANCSA, 43 U.S.C. Sec. 1621(b), which provides that the Secretary shall "promptly issue patents to all persons who have made a lawful entry on the public lands in compliance with the Public Land Laws for the purpose of gaining title to homesteads ...";
 
 
 9
 2) The conveyance to the Native corporations was subject to their pre-existing rights in the lands under section 14(g) of ANCSA, 43 U.S.C. Sec. 1613(g); and
 
 
 10
 3) If ANCSA requires the conveyance of the lands to the Native Corporations despite their prior claims under the homesteading laws, ANCSA is unconstitutional.
 
 
 11
 Lee, Eklund, and Carr sought patents from the United States to the formerly classified lands and a ruling that those lands are being held in constructive trust by the Native corporations, or compensation from the United States for a constitutional taking of their property.
 
 DECISION OF THE TRIAL COURT
 
 12
 The district court granted summary judgment against Lee, Eklund, and Carr on the grounds that it lacked subject-matter jurisdiction. Lee v. United States, 629 F.Supp. 721 (D.Alaska 1985). The court found that the homesteaders and the United States had reached a compromise in 1964, 629 F.Supp. at 725, but it nevertheless examined the homesteaders' claims. The court did not decide whether Lee, Eklund, and Carr had valid title to the lands, finding instead that, even if they did, applicable law provided no cause of action and no remedies against any of the defendants.
 
 STANDARD OF REVIEW
 
 13
 The trial court's grant of summary judgment is reviewed de novo. Nevada v. United States, 731 F.2d 633, 635 (9th Cir.1984). The court of appeals may affirm on any ground supported by the record. City of Las Vegas v. Clark County, 755 F.2d 697, 701 (9th Cir.1984).
 
 DISCUSSION
 
 14
 We do not consider whether the agreements between Lee, Eklund, and Carr and the Bureau of Land Management were a compromise in which the homesteaders relinquished their claims to the disputed lands. Regardless of whether the homesteaders would be estopped by the alleged compromise from making their claims in the courts, other factors prevent them from bringing their actions.
 
 
 15
 Theories Under Which Lee, et al. Claim Title to the Lands
 
 
 16
 All of Lee, Eklund, and Carr's claims are hinged on the contention that the disputed lands were rightfully theirs under the homestead laws that were in effect when they located in the Eagle River Valley in 1957. Those claims to title turn upon whether the lands were legally opened, or should have been opened, to entry for homesteading. To prevail, they must show either (1) that the lands were automatically opened to entry upon the Power Commission's determination that the lands would "not be injured or destroyed for the purposes of power development by location, entry, or selection under the public-land laws," 16 U.S.C. Sec. 818, or (2) that the Bureau of Land Management was required by law to open the lands to homesteading, so that legal title should have passed to Lee, Eklund, and Carr.
 
 
 17
 Did the "No Injury" Determination Have the Effect of Opening
 
 
 18
 the Lands to Homestead Entry?
 
 
 19
 Lee, Eklund, and Carr argue that the disputed lands were open to entry by virtue of the "no injury" determination by the Power Commission alone, without need of a declaration by the Secretary. Section 24 of the Power Act provides that the effect of a withdrawal continues only "until otherwise directed by the [Power] Commission or by Congress." 16 U.S.C. Sec. 818. The function of the Secretary of the Interior, they contend, is only to "declare" that the land has been opened to entry. We find nothing in the legislative history either in support of or against this reading of the section.
 
 
 20
 The United States argues that the wording of section 24 demonstrates an understanding that the Power Commission does not have the authority to open formerly classified lands. Section 24 provides that the Secretary may select the lands for other uses after a "no-injury" determination. It states also that "before any lands ... are declared open to location, entry, or selection by the Secretary of the Interior, notice of intention to make such declaration shall be given to the Governor of the State within which such lands are located," 16 U.S.C. Sec. 818, so that the State may set the lands aside for its own use. In addition, the United States argues, both the Secretary and the Power Commission have taken the position that a declaration is necessary to open lands to homestead entry. The United States points out that letters from both the Secretary and the Commission informed the homesteaders that entry would not be lawful until the Secretary had made a declaration.
 
 
 21
 Does Section 24 Require a Declaration by the Secretary?
 
 
 22
 Section 24 provides that when a finding of "no injury" has been made by the Commission, the Secretary of the Interior "shall declare such lands open to location, entry, or selection." 16 U.S.C. Sec. 818. Lee, Eklund, and Carr's claim is that the Secretary violated section 24 in failing to return the lands to the public domain within a reasonable time after the Power Commission's determination. In a similar case, Reeves v. Andrus, 465 F.Supp. 1065 (D.Alaska 1979), the district court held that section 24 requires the Secretary to revoke or modify the powersite classification within a "reasonable period." By its use of the word "shall" in section 24, the court concluded, Congress mandated the removal of a powersite classification following a determination of "no injury." The Secretary had only a "reasonable period" following that determination to decide whether other public interests dictated a removal of the lands from the public domain under any other powers he possessed.
 
 
 23
 The Secretary contends that the wording of section 24 does not require that any action be taken.
 
 
 24
 Even if this issue were decided in favor of Lee, Eklund, and Carr, the matter would not be ended. To establish that they are entitled to some remedy, Lee, Eklund, and Carr must demonstrate that if the lands had been promptly returned to the public domain, they would have been entitled to them as a matter of fact. The Secretary argues that if it had been required to eliminate the powersite classification, it might have set the lands aside for another public purpose, still preventing entry for homesteading.
 
 
 25
 We first decide whether we have jurisdiction to consider the merits of either position.
 
 Applicable Statutes of Limitations
 
 26
 The limitations period may differ depending upon whether Lee, Eklund, and Carr rely upon a claim to actual title in the lands, or a claim that they should have had title but for a statutory violation by the Secretary.
 
 
 27
 The district court considered that this suit was one to quiet title in the disputed lands as against the United States. The Quiet Title Act provides a cause of action in any case in which the United States' title to land is challenged. See 28 U.S.C. Sec. 2409a. Lee, Eklund, and Carr conceivably could have brought suit under the Quiet Title Act at any time following the accrual of their cause of action until the time the United States disclaimed ownership of the lands in favor of the Native corporations. They might also sue on the theory that the disclaimer of ownership was invalid, leaving title in the United States. In either event, the limit on time for bringing suit under the Quiet Title Act is twelve years.
 
 
 28
 Alternatively, Lee, Eklund, and Carr assert that the Secretary was required to open the classified lands to homestead entry under section 24 of the Power Act. There is no provision for judicial review under section 24, but section 702 of the Administrative Procedure Act provides for judicial review where a person has suffered a "legal wrong because of agency action." 5 U.S.C. Sec. 702. Under section 702, judicial review is available when the plaintiff alleges a violation of constitutional, statutory, regulatory or other legal mandates or restrictions. Merrill Ditch-Liners, Inc. v. Pablo, 670 F.2d 139, 140 (9th Cir.1982). The time for commencing an action against the United States generally is limited to six years after the right of action accrues. 28 U.S.C. Sec. 2401.
 
 
 29
 Depending upon how their claim is characterized, Lee, Eklund and Carr had either six or twelve years to bring suit once their cause of action accrued.
 
 Time of Accrual of the Cause of Action
 
 30
 Lee, Eklund, and Carr argue that they did not have a right of action until a patent on the disputed lands was issued to another party. They cite Brown v. Hitchcock, 173 U.S. 473, 19 S.Ct. 485, 43 L.Ed. 772 (1899), and United States v. Schurz, 102 U.S. (12 Otto) 378, 26 L.Ed. 167 (1880), for that proposition. Those cases do not speak to the issue of the time of accrual of actions. They hold only that while title is in the United States, all questions of right to lands should be addressed to the Land Department and not to the courts. Those cases were decided long before Congress passed the Quiet Title Act, which allowed claimants to sue in the courts in such cases. They are also irrelevant to Lee, Eklund and Carr's alternative claims that the Secretary of the Interior violated a federal statute.
 
 
 31
 A cause of action generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Alexopulos by Alexopulos v. Riles, 784 F.2d 1408, 1411 (9th Cir.1986); Gibson v. United States, 781 F.2d 1334, 1344 (9th Cir.1986). The injury that Lee, Eklund, and Carr allege is not the conveyance of the classified lands to the Native Corporations in 1979. If the basis of their claims is the Quiet Title Act, their action accrued when it became clear that the United States intended to keep title to the disputed lands despite their competing claims. We agree with the district court that Lee, Eklund, and Carr "should have realized by 1961 that the United States had a conflicting claim to the portions of their homestead entries within the Power Site Classification: that year the BLM issued its survey covering the disputed lands, published notice of the survey in the Federal Register, and issued final decisions rejecting their homestead entries." 629 F.Supp. at 727. See also McIntyre v. United States, 789 F.2d 1408, 1411 (9th Cir.1986).
 
 
 32
 The alternative basis for Lee, Eklund and Carr's title claims is that the Secretary did not open the lands to entry within a reasonable time after the determination that they would not be preserved as a powersite. The "no injury" determination was made in 1952. If their cause of action is based upon the Secretary's failure to open the lands within a "reasonable time" as outlined in Reeves, it must have been clear that a reasonable time had passed shortly after completion of the Bureau's survey in 1961. Moreover, they should have known from the Secretary's letter that the Secretary did not intend to act in accordance with what they now claim was his duty under section 24 of the Power Act. Their right of action accrued after they received word from the Secretary in 1959 that the lands would remain classified as a potential powersite and not be opened to homestead entry despite the Power Commission's determination.
 
 
 33
 Lee, Eklund, and Carr argue that the statute was tolled by their reliance on the Secretary's representation that he was under no duty to remove the power classification. The rule is that "the statute of limitations is triggered by the [claimants'] knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law." Blanton v. Anzalone, 760 F.2d 989, 992 (9th Cir.1985). A claim accrues when the plaintiff knows both the existence and the cause of his injury, and not at a later time when he knows that the injury constitutes a legal wrong; a different rule would demand less diligence than is due from the plaintiff in pursuing his claim. United States v. Kubrick, 444 U.S. 111, 125-27, 100 S.Ct. 352, 360-62, 62 L.Ed.2d 259 (1979).
 
 
 34
 Lee, Eklund, and Carr cite Humboldt County v. United States, 684 F.2d 1276 (9th Cir.1982), and other cases for the proposition that the government is estopped by its own misadvice. These cases offer no support for their argument. In Humboldt, for example, the Bureau returned the plaintiffs' application for title to certain lands with the statement that it would be inappropriate to pass upon it until Congress decided whether the lands were to be designated a wilderness area. The court found that plaintiffs were not required to submit the application a second time. Resubmission to the Bureau would have been futile. 684 F.2d at 1285. Here, the issue is not whether the question should be resubmitted to the same agency, but whether the allegation of possible agency misdeeds ought to be taken to the courts.
 
 CONCLUSION
 
 35
 The homesteaders' causes of action could have accrued no later than 1961, when it was clear that the classified lands would not be patented to them. At most, they had twelve years within which to bring suit. They did not file until 1979. Under either the Quiet Title Act or the Administrative Procedure Act the statute of limitation precludes the action.
 
 
 36
 Because Lee, Eklund, and Carr are prevented by the statute of limitations from asserting any claims to title in the disputed lands, they have no basis for challenging the right to title of the Native Corporations.
 
 
 37
 We express no opinion as to the district court's findings that Block v. North Dakota, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (Quiet Title Act is exclusive remedy in challenges to United States' title in lands); see generally McIntyre v. United States, 789 F.2d 1408, 1410-11 (9th Cir.1986), is applicable to this case, and that the Alaskan Native Claims Settlement Act preempts federal common law in the area of Native claims to public lands.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 The homestead laws were repealed in 1976 by Pub.L. 94-579, 90 Stat. 2789