Linda K. WOOD, Plaintiff–Appellant,

v.

Steven C. OSTRANDER; Neil Maloney,
Defendants–Appellees.

No. 87–3924.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1988.

Decided July 13, 1988.

Paul Lindenmuth, Neil J. Hoff, Tacoma,
Wash., for plaintiff-appellant.

Betty Edwards, Asst. Atty. Gen. (on
brief), Rene D. Tomisser, Asst. Atty. Gen.
(argued), Olympia, Wash., for defendants-
appellees.

Before FLETCHER and THOMPSON,[*] Circuit Judges, and CARROLL,[**] District Judge.

FLETCHER, Circuit Judge:

Linda Wood brought this action against Washington State Trooper Steven Ostrander and others for damages under 42 U.S.C. § 1983. Wood appeals the district court's dismissal on summary judgment. We reverse.

## FACTS

At 2:30 a.m., in the morning of September 23, 1984, Trooper Ostrander pulled a car to the side of the road for driving with its high beams on. Ostrander determined that the driver, Robert Bell, was intoxicated and placed him under arrest. Ostrander called for a tow truck to have the car impounded, and returned to the car and removed the keys. Wood, who was sitting in the car, asked Ostrander how she would get home. Ostrander replied that he was sorry, but that Wood would have to get out of the car. These facts are not disputed. Wood claims that Ostrander simply returned to his patrol car and drove away. Ostrander claims that he offered to call a friend or family member who could give Ms. Wood a ride home, but that she declined the offer. Although Wood claims that she did not see any open business at the time Ostrander drove away, Ostrander claims that a Shell station and a Seven–Eleven store were clearly visible and open for business. Ostrander further claims that Wood was picked up by an unknown driver before Ostrander drove away, though Bell and Wood dispute this.

Ostrander left Wood near a military reservation in the Parkland area of Pierce County, which has the highest aggravated crime rate in the County outside the City of Tacoma. The temperature was 50 degrees and Wood was wearing only a blouse and jeans. After walking one half block towards her home, which was five miles away, and having turned down rides offered by three or four strangers, Wood accepted a ride with an unknown man. The driver took Wood to a secluded area and raped her.

Wood had little or no money on her person at the time. Although she lived with her parents, Wood did not try to call them for help because, she claims, they would have been unable to pick her up: her mother has night-blindness and her step father suffers from brain damage.

The district court denied defendants' first summary judgment motion, ruling that Ostrander's actions could not be characterized as merely negligent. Subsequently, the district court granted defendants' second motion for summary judgment, on the ground that Ostrander was entitled to good faith, qualified immunity, and that Ostrander owed no "affirmative constitutional duty of protection" to Wood.[1]

We review the district court's grant of summary judgment de novo to determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). All facts in the record and inferences drawn from them must be viewed in the light most favorable to the non-moving party. *Clipper Exxpress v. Rocky Mountain Motor Tariff,* 690 F.2d 1240, 1250 (9th Cir. 1982).

[*] After Judge Anderson's death, Judge Thompson was substituted for Judge Anderson. He has listened to the tape of oral argument and read the briefs.

[**] Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

1. The district court did not rule on defendants' argument that the damages claim should be dismissed on proximate cause grounds. Although this court could presumably affirm on that basis if it had legal merit and factual support in the record, *see, e.g., Lee v. United States,* 809 F.2d 1406, 1408 (9th Cir.1987), defendants have not raised the proximate cause argument on appeal. We have not examined its merits.

## DISCUSSION

### I. *Whether Wood has stated a § 1983 claim*

To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right. *Rinker v. Napa County,* 831 F.2d 829, 831 (9th Cir.1987) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed. 2d 420 (1981)). Defendants do not dispute that in arresting Bell and impounding the car, Ostrander was acting under color of state law. They do, however, argue that Wood fails to state a claim cognizable under § 1983 because, first Ostrander's conduct at most negligent and, second, Wood has adequate state remedies to pursue her claim. These distinct threshold issues are considered in turn.

### A. *The "mere negligence" bar*

In *Daniels v. Williams,* 474 U.S. 327, 330–32, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986), the Supreme Court held that mere negligence or lack of due care by state officials does not trigger the protections of the Fourteenth Amendment and therefore does not state a claim under § 1983. In doing so, the Court overruled that part of *Parratt,* 451 U.S. at 536–37, 101 S.Ct. at 1913; which held that a negligent loss of property by state officials could be a "deprivation" under the Due Process Clause. *Daniels,* 474 U.S. at 330, 106 S.Ct. at 664. However, the Court expressly left open the question of "whether something less than intentional conduct, such as recklessness or gross negligence, is enough to trigger the protections of the Due Process Clause." *Id.* at 334 n. 3, 106 S.Ct. at 667 n. 3.

This question has since been addressed by several courts of appeal. In *Ketchum v. Alameda Co.,* 811 F.2d 1243 (9th Cir. 1987), this court stated that *Daniels* did not control the resolution of a § 1983 case claiming state liability for third-party crimes, where the plaintiff had alleged gross negligence by the state. 811 F.2d at 1244, 1246 n. 3. Other circuits have held recklessness or gross negligence sufficient to state a § 1983 claim, whereas none has held that only intentional misconduct will suffice. *See, e.g., Taylor v. Ledbetter,* 818 F.2d 791, 793 (11th Cir.1987) (en banc) (claim that state officials "were 'grossly negligent' or 'deliberately indifferent'" is "sufficient to overcome either a *Daniels* or *Davidson* bar"); *Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 199– 200 (6th Cir.1987) (gross negligence cognizable under § 1983); *White v. Rochford,* 592 F.2d 381, 385 (7th Cir.1979) (gross negligence or reckless disregard for the safety of others is cognizable); *see also Davidson v. O'Lone,* 752 F.2d 817, 828 (3rd Cir.1984) (en banc), *aff'd sub nom., Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (gross negligence or reckless indifference sufficient) (plurality view).[2]

In this case, Wood has raised genuine issues of fact tending to show that Trooper Ostrander had acted with gross negligence, recklessness, or "deliberate indifference" to Wood's safety. *See Taylor v. Ledbetter,* 818 F.2d at 793, 795–97 (deliberate indifference to victim's well-being is more than negligence and supports § 1983 claim); *Davidson v. O'Lone, supra,* 752 F.2d at 828; *see also Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (prison officials' deliberate disregard of prisoner's serious illness or injury violates Eighth Amendment and is cognizable under § 1983). The rationale underlying *Daniels'* bar of negligence-based § 1983 claims is that mere lack of due care, such as leaving a pillow on the prison stairs

---

**2.** *Jackson v. City of Joliet,* 715 F.2d 1200, 1206 (7th Cir.1983), is not *contra.* There, the court found that a grossly negligent rescue attempt was not actionable under § 1983 where the plaintiff's decedents were already trapped in a

burning car when the police arrived. The court expressly distinguished cases in which the state officials' actions created the danger or created a special duty of protection toward the plaintiff. *See id.* at 1204–05.

(*Daniels*) or mislaying an inmate's property (*Parratt*) is "quite remote" from the Fourteenth Amendment's purpose of redressing abuses of power by state officials. 474 U.S. at 332, 106 S.Ct. at 665. Here, the facts put in issue by Wood—that Ostrander arrested the driver, impounded the car, and left Wood by the side of the road at night in a high-crime area—show an intentional assertion of government power which, according to Wood's version of the case, tends to show a disregard for Wood's safety that may amount to more than negligence. Even in *Davidson v. Cannon,* although the injury to the plaintiff was also very serious, the officials' acts and omissions were not deliberate, as Ostrander's allegedly were; rather, as characterized by the Court, the acts in *Davidson* were no more than negligent oversight. 474 U.S. at 347, 106 S.Ct. at 670. Ostrander's actions allegedly involve an element of abuse of power, and his conduct may be more than mere negligence. Wood's claim is not barred by *Daniels.*

B. *The "state remedies" bar*

 *Parratt v. Taylor,* 451 U.S. at 541–44, 101 S.Ct. at 1916–17, and its progeny hold that a deprivation of liberty or property is not cognizable under § 1983 when a state's post-deprivation remedies are adequate to protect a victim's procedural due process rights. *See, e.g., Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1983).[3] However, "[t]he *Parratt* line of cases does not focus on the relevance of procedural protections to alleged violations of *substantive* constitutional rights." *Smith v. City of Fontana,* 818 F.2d 1411, 1414 (9th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1988). Accordingly, the existence of state remedies is irrelevant and the *Parratt* bar inapplicable where the plaintiff alleges a violation of a substantive right under either the Bill of Rights or the Due Process Clause. *Smith,* 818 F.2d at 1415; *accord Mann v. Tucson Dept. of Police,* 782 F.2d 790, 792–93 (9th Cir.1986) (per curiam); *see also Daniels,* 474 U.S. at 337–

39, 106 S.Ct. at 677–79 (Stevens, J., concurring); *Parratt,* 451 U.S. at 545, 101 S.Ct. at 1917 (Blackmun, J., concurring); *Haygood v. Younger,* 769 F.2d 1350, 1356 (9th Cir. 1985) (en banc) (*Parratt* and *Hudson* "did not deal with official assaults, batteries or other invasions of personal liberty").

Defendants argue that the existence of a state tort remedy for Wood precludes the § 1983 claim under *Parratt.* According to defendants, the only distinction between this case and the *Parratt* line is that *Parratt* and its progeny involve deprivations of property whereas this case involves an alleged deprivation of liberty. *See Ingraham v. Wright,* 430 U.S. 651, 674–75, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) (child had liberty interest in personal security and freedom from restraint and infliction of pain). Defendants argue that we should anticipate a Supreme Court holding to the effect that *Parratt* extends to deprivations of liberty, because the Court cited certain § 1983 cases involving assaults to support its conclusion that *Parratt* extends to intentional deprivations of *property.* *See Hudson v. Palmer,* 468 U.S. at 531 n. 10, 533–34 n. 14, 104 S.Ct. at 3202 n. 10, 3204 n. 14. Defendants also rely on this court's decision in *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1352 (9th Cir.1981), *aff'd sub nom. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), which held in part that a college football coach's assault on a player was not cognizable under § 1983.

Defendants' argument is unpersuasive, because it follows the wrong axis of analysis. This circuit has analyzed *Parratt* and its progeny not by distinguishing liberty versus property deprivations, but rather by analyzing substantive versus procedural rights deprivations. *See, e.g., Smith v. City of Fontana,* 818 F.2d at 1414–15. The relevant inquiry is whether the deprivation is sufficiently serious that " 'the constitutional line ha[s] been crossed' so as to constitute a deprivation of substantive due process." *Rutherford v. City of Berkeley,* 780 F.2d 1444, 1447 (9th Cir.1986). *Ingraham* and *Rutledge* do not suggest

---

**3.** This aspect of *Paratt* was not overruled by *Daniels.*

otherwise. In *Ingraham,* the Court considered only a procedural due process challenge based on the lack of a hearing before corporal punishment was meted out. *See* 430 U.S. at 674, 680–83, 97 S.Ct. at 1414, 1417–18. In *Rutledge,* this court did not analyze how serious the assault was, deciding that *Parratt* was preclusive of such inquiry. 660 F.2d at 1352. To the extent that *Rutledge* found *Parratt* to bar § 1983 claims for substantive rights violated by official assaults, it does not survive this court's en banc ruling in *Haygood v. Younger,* 769 F.2d at 1356.

The seriousness of the official misconduct may determine whether "the constitutional line" between a procedural and a substantive due process violation "has been crossed," so that the availability of state court relief will not bar a § 1983 claim. Clearly, the line is crossed in instances of serious police brutality. *See, e.g., Rutherford,* 780 F.2d at 1448. But *Rutherford* only "[p]artially answer[ed] the question left open in *Haygood*" as to whether "official assaults, batteries or other invasions of personal liberty" amount to substantive due process violations. *Id.* While brutality by police or prison guards is one paradigmatic example of a substantive due process violation, it does not exhaust the possibilities.

More generally, substantive due process violations comprise those acts by the state that are prohibited "regardless of the fairness of the procedures used to implement them." *Daniels,* 474 U.S. at 331, 106 S.Ct. at 665. In the prison setting at least, a substantive due process violation may arise from established procedures that create an unreasonable risk of harm. *Hudson v. Palmer,* 468 U.S. at 541 n. 4, 104 S.Ct. at 3208 n. 4 (Stevens, J., concurring in part). Although Ostrander did not himself assault Wood, he allegedly acted in callous disregard for Wood's physical security, a liberty interest. *See Ingraham v. Wright, supra.* In addition, Ostrander acted within

a vacuum of unguided discretion because no state policy existed for instructing officers how to deal with third parties stranded as a result of an arrest. Thus, the state's "established [non]procedure" may have created an unreasonable risk to Wood. Wood has presented a triable issue of fact as to whether the deprivation here falls into the category of "other invasions of personal liberty." *Haygood v. Younger,* 769 F.2d at 1356.

Ostrander arrested the driver and impounded the car in which Wood was a passenger, leaving her stranded alone in a high-crime area; Wood has raised a factual dispute as to whether Ostrander made any inquiry at all into her means of getting safely home. In our society, which is intensely aware of potential danger from street crime, it would not be an exaggeration for a jury to find that Ostrander's alleged conduct "shocks the conscience," and thereby crosses the line into a deprivation of substantive due process. *See Rutherford,* 780 F.2d at 1446, 1447 (citing *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)).

## II. *Qualified immunity*

 State officials cannot be held liable for damages under § 1983 unless their conduct violates a clearly established constitutional right. *Davis v. Scherer,* 468 U.S. 183, 193, 104 S.Ct. 3012, 3018, 82 L.Ed. 2d 139 (1984). Officials are entitled to qualified immunity if their conduct is objectively reasonable "as measured by reference to clearly established law." *Id.* at 191, 104 S.Ct. at 3017 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The district court found that the defendants were shielded by qualified immunity.[4] In reviewing the court's finding of qualified immunity, this court must determine both the legal contours of the constitutional deprivation, if any, that may be shown from the alleged facts in this case, and whether

---

**4.** The district court found that the law was unclear both at the time, and at present, regarding a police officer's duty to protect members of the public from harm, even where a special relationship between the defendant and the victim

exists. The court also attempted to distinguish away the central case relied on by *plaintiffs* by limiting it to its precise facts. These contentions, advanced by defendants on appeal, are addressed in the following sections.

those legal contours were clearly established at the time of the incident.

## A. *The law in 1984*

In *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir.1985), this court held that "in the absence of binding precedent, a court must look to whatever decisional law is available to ascertain whether the law is clearly established under the *Harlow* test." *Accord Bilbrey v. Brown*, 738 F.2d 1462, 1466 (9th Cir.1984). The available decisional law includes cases from state courts, other circuits and district courts. *Ward v. San Diego Co.*, 791 F.2d 1329, 1332 (9th Cir.1986).

The case most like our case is *White v. Rochford*, 592 F.2d 381 (7th Cir.1979), which reversed the dismissal of a § 1983 complaint. In *White*, the defendant police officers arrested a driver for drag racing on the Chicago Skyway, a busy, limited-access highway. The complaint alleged that the driver, who was uncle to the three minor children riding with him in the car, pleaded with the officers to take the children to the station or a phone booth so that they could contact their parents. The officers refused, and instead left the children in the abandoned car on the roadside, in inclement weather. The court held that the alleged conduct stated a claim under § 1983. The officers "could not avoid knowing that, absent their assistance, the three children would be subject to exposure to cold weather and danger from traffic. *This indifference in the face of known dangers certainly must constitute gross negligence.*" 592 F.2d at 385 (emphasis added).

In dealing with *White*, decided five years before the incident in this case, defendants frame the immunity issue thus:

> In determining whether Ms. Wood was subjected to a constitutional deprivation it is the state of the law on September 23, 1984, which must be used to determine whether the violation occurred.... As of September 23, 1984, no court had ruled that a police officer owed a *constitutional* duty to make transportation arrangements for a non-intoxicated adult

female who was left on the sidewalk of a major urban arterial within easy walking distance of at least two 24–hour businesses following the arrest of the person with whom she had previously been riding.

Appellee's Brief at 9 (citation omitted). Defendants seemingly suggest that this case can be disposed of if it does not bear a strict factual similarity to previous cases finding liability. However, this crabbed view of the good faith immunity principle cannot withstand analysis. As the Supreme Court reaffirmed last term, it is not the case that "an official action is protected by official immunity unless the very action in question has previously been held unlawful, ... but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted); *see Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985).

The first question is whether *White* is meaningfully distinguishable from the instant case. Both cases involve a police officer's roadside abandonment of non-arrested third parties. Defendants apparently would have the court decide that stranding three children on a busy eight-lane expressway is much worse than stranding a lone female in a high-crime area at 2:30 a.m., indeed so much worse that the former is a constitutional violation while the latter is not. It would seem that the Supreme Court's admonition in *Anderson* against looking for a repetition of "the very action in question" applies forcefully against making this type of comparison. Although the dangers facing the victims in the two cases may come from very different sources, the degree of danger is high in both, and the alleged police indifference to exposing the plaintiffs to the dangers is shocking in both instances. Defendants' suggestion that the children were in greater danger than Wood ("*certain danger* from the traffic and weather," Appellee's Brief at 10) is unpersuasive considering what actually occurred: none of the children was injured by a car (two suffered mental anguish, and a

third suffered aggravation of his asthma condition from the weather), whereas Wood was raped.

Defendants also argue that *White* was merely a "plurality" opinion and, further, adopted an *"in loco parentis"* rationale, finding that the officers owed a special duty to the children. This argument mischaracterizes *White*. First, the opinion of the court and the concurrence agree on the basic rationale of § 1983 liability: "indifference [of the officers] in the face of known dangers," 592 F.2d at 381 (opinion of court), or "unnecessarily endangering *the innocent parties* in reckless disregard of their safety," *id.* at 388 (concurrence) (emphasis added). Nothing in either opinion suggests that the result would have been different had the abandoned person been an adult. Indeed, the phrase *"in loco parentis"* appears in the opinion only in the second half of a lengthy footnote setting forth an alternate rationale for liability. The court states that the officers could be liable under § 1983 for non-feasance in the face of an affirmative duty of police officers to protect peace, order and personal safety of others. 592 F.2d at 384 & n. 6. The *"in loco parentis"* concept is introduced as *buttressing* the existence of a duty in that case, and not as the sole basis for that duty. *Id.*

The immunity standard considers whether a reasonable law enforcement officer should view the *White* case as controlling. Given this element of reasonableness, the qualified immunity regime of clearly established law should not be held to allow § 1983 defendants to interpose lawyerly distinctions that defy common sense in order to distinguish away clearly established law. *White* holds that a police officer may be liable under § 1983 when he abandons passengers of arrested drivers thereby exposing them to unreasonable danger. It defies common sense to find a meaningful legal distinction between the dangers facing children crossing a busy highway and a woman left alone to fend for herself at 2:30 a.m. in a high-crime area. A reasonable police officer, whose job comprises an awareness of potential crime, would be

aware of the potential danger facing a woman in Wood's circumstances.

**B.** *The precedential effect of* White *in this circuit*

The inquiry does not end here, however, because *White* did not necessarily establish law for this circuit. Where there are few cases on point, and none is binding, "an additional factor that may be considered in ascertaining whether the law is clearly established is a determination of the likelihood that the Supreme Court or this circuit would have reached the same result" as the non-binding authorities at that time. *Capoeman*, 754 F.2d at 1515; *accord Ward v. County of San Diego*, 791 F.2d 1329 at 1332 (9th Cir.1986).

The question is partially answered by *Escamilla v. Santa Ana*, 796 F.2d 266 (9th Cir.1986), which relied on pre–1984 cases for the proposition that "state officers' inaction," including failing to perform a legally required act or showing deliberate indifference to a prisoner's safety, may be the basis for § 1983 claims. 796 F.2d at 268 (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), and *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978)). Although *Estelle* and *Johnson* are both prisoner cases, *Escamilla* involved the inaction of police officers in failing to protect a bystander. *Escamilla* dismissed the § 1983 claim, not because prisoner cases are *sui generis* and inherently distinguishable from police-and-bystander cases, but rather because in *Escamilla* there was no "custodial or other relationship obligating the police to protect the victim's safety." 796 F.2d at 269. However, *Escamilla* notes that such a relationship could arise between police and persons not in custody where "the state itself has put a person in danger." *Id.* The court relied for this proposition on another pre–1984 case, *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982) ("If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."). Thus, the Ninth Circuit on July 31, 1986,

based on pre–1984 cases, stated that police officers could be liable under § 1983 when, through inaction, they fail to protect a person they have put in danger. There is no reason to think that this court would have interpreted the same pre–1984 cases differently as of September 23, 1984.[5]

We conclude that qualified immunity is unavailable to Ostrander.

### C. *Triable issues of fact regarding liability*

■ Wood has raised a triable issue of fact as to whether Ostrander's conduct "affirmatively placed the plaintiff in a position of danger." *Ketchum*, 811 F.2d at 1247; *see Jackson v. City of Joliet*, 715 F.2d 1200, 1204 (7th Cir.1983) (distinguishing situation where arrest creates the danger, actionable under § 1983, from situation where danger existed before defendant acted).

The state had made no "affirmative commitment" to protect the plaintiff, *see Escamilla*, 796 F.2d at 269–70, in that there was no state police policy at the time for dealing with stranded non-arrested third parties. But the lack of a policy can hardly count in defendants' favor. The fact that Ostrander arrested Bell, impounded his car, and apparently stranded Wood in a high-crime area at 2:30 a.m. distinguishes Wood from the general public and triggers a duty of the police to afford her some measure of peace and safety. *See White v. Rochford*, 592 F.2d at 384 & n. 6 (and authorities cited therein). *See also Chambers–Costenes v. King Co.*, 100 Wash.2d 275, 669 P.2d 451 (1983); Plaintiffs' Opposition to Summary Judgment, Exhibits 1, 2(c) (policy of state police to respond to requests for assistance in courteous and judicious manner).

Finally, plaintiff has raised at least a triable issue (if not an undisputed one) regarding the state's knowledge of the danger: official crime reports show that the area where Wood was stranded had the highest violent crime rate in the County

outside the City of Tacoma. Ostrander, a state trooper stationed in that area since 1981, may well be chargeable with constructive, if not actual, knowledge of that fact. Moreover, the inherent danger facing a woman left alone at night in an unsafe area is a matter of common sense. *Cf. White v. Rochford, supra.*

Most of the factual disputes in this case go to the issue of danger. Defendants contend, and the trial court found, that a 24–hour Shell and a 24–hour Seven–Eleven were located within two blocks of the location of the stop. Defendants further contend that there were paved sidewalks. Even if there is no genuine factual dispute as to these, their relevance is open to question by the trier of fact. The district court and the defendants too readily assume that Wood's travail would have been over if she had only gone to the Shell station or the Seven–Eleven. It is for the trier of fact to determine whether a reasonable person should have regarded a gas station or convenience store, located in a high crime neighborhood, as some kind of safe haven where she would have been given assistance or permitted to stay until daybreak before walking five miles home. Nor is a telephone much help to a person who allegedly has no money to place a call and no one to call. These factual assumptions, either expressly or impliedly made, are particularly inappropriate for the district court to make on summary judgment.

Other facts relevant to the safety issue are unresolvable on this record. It is unclear whether Wood had any money to make a phone call, whether there was anyone who could have helped her if she had been able to call them, and whether Wood acted unreasonably by accepting a ride with an unknown man.

There is a factual dispute as to whether Ostrander made any inquiry at all as to Wood's ability to get safely home, or whether, instead, he ignored her request for help. Certain evidence suggests that

---

**5.** Post-occurrence decisional law supports this conclusion. *See Ketchum v. Alameda Co.,* 811 F.2d at 1247 (state official may incur duty to protect a person where "the state has affirma-tively placed the plaintiff in a position of danger"); *Escamilla,* 796 F.2d at 269–70; *Jensen v. Conrad,* 747 F.2d 185, 193–94 (4th Cir.1984).

Ostrander untruthfully told his superiors that he was told that Wood was being picked up by some "friends," (Exhibit 4 to Plaintiff's Summary Judgment Opposition), and it is disputed whether Ostrander saw Wood picked up at all.

### CONCLUSION

In sum, plaintiff has raised a genuine factual dispute regarding whether Ostrander acted with gross negligence, recklessness, or deliberate indifference to Wood's safety by affirmatively placing her in danger. Ostrander is not entitled to the defense of qualified immunity. Accordingly, the grant of summary judgment for the defendant is REVERSED.

CARROLL, District Judge, dissenting:

I would affirm the district court's order granting summary judgment in defendants' favor dismissing the amended complaint.

The district judge thoughtfully considered in his eight page order granting defendants' motion for summary judgment issues respecting whether the undisputed facts demonstrated "a violation of a constitutional right," and if so, whether the claim "should be dismissed on the basis that Ostrander is entitled to a good faith immunity." (ER 54, p. 3.)

In going through its analyses, the trial court found that the following facts, amongst others, were undisputed:

The area in which the stop occurred was well lit. It was a clear night. There was a 24-hour Shell station located two blocks north of the area in which the stop occurred. There was a 24-hour 7-Eleven store located one-half block south of the area in which the stop occurred. Wood denies seeing any open businesses. Wood took a ride with a stranger and was raped.

Appellant has not challenged this finding as an issue on appeal. Ms. Wood's affidavit that she did not see these businesses does not create a genuine issue of fact as to their presence considering there were appropriate affidavits that businesses were present and open at the time in question.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Appellant's efforts to obliquely create a factual issue through argument is inappropriate and violative of the rules of this Court. When pressed on this proposition at oral argument, appellant's counsel took the position that the presence of these businesses near the arrest scene was irrelevant for summary judgment purposes.

The Majority Opinion does a disservice to the record when it infers several times that the character of the specific site where Ostrander left Ms. Wood was the epicenter of a high crime area and that there was a factual dispute whether it was lighted and in close proximity of two 24-hour business establishments.

I believe that the district court properly determined that a "special relationship" was not created under the circumstances present on the early morning hours of September 23, 1984 and further, that Ostrander was entitled to qualified immunity:

... Wood was an adult female, admittedly able to exercise the independent judgment of an ordinary adult. She was left within walking distance of two open businesses where she could seek help. In this case the State had not affirmatively committed itself to protecting this class of persons. The state at the time of the indictment had no guidelines requiring the safekeeping of passengers of arrestees. In this case, it cannot be said that the state knew of Wood's plight. This is not the type of case where the state had knowledge of a particular madman who was likely to prey on Wood. The plaintiff alleges that this particular area is a high-crime area. To hold that the trooper had a duty of protection on that basis would be to create an affirmative constitutional duty of protection, in essence, to the public as a whole. This court declines to do so. Ostrander was unaware of whether or not she had money available to seek help. Thus, even assuming that an officer in 1984, through some crystal ball analysis, could foresee the analytical approach suggested by the Ninth Circuit in 1986, a special relationship was not created. At the

time of the incident Ostrander's conduct did not violate a clearly established constitutional right. Ostrander is entitled to qualified immunity from suit for civil damages. (ER 54, p. 9.)

The district court was charitable in opining that a crystal ball might enable a police officer in 1984 to conclude what any panel of the Ninth Circuit would do when confronted with a claim such as this. In point of fact, it would place such officer in a mandatory position of a wise and all knowing prognosticator. Clearly an untenable expectation under the pronouncements of this Court and the United States Supreme Court.

A reading of the three separate opinions of the panel in *White v. Rochford*, 592 F.2d 381 (7th Cir.1979), discloses the importance of the plaintiffs' status as children *and* the characteristics of the area where they were abandoned to the finding by two judges of a "special relationship." The prefatory statement in Judge Sprecher's opinion makes this evident:

> The issue presented by this case is whether police officers may, with constitutional impunity, abandon children and leave them in health-endangering situations after having arrested their custodian and thereby depriving them of adult protection. We hold that they may not, and accordingly, we reverse the district court's dismissal of a complaint alleging such facts and remand for trial.

*Id.*, p. 382.

This same theme was expressed in the concurring opinion:

> In the case at bar the children in the car had a federally protected right to be free from unjustified intrusions on their personal security by the police. Their personal security was under the protection of their uncle. If that protection was removed and no alternative protection was provided, they would be exposed to danger as occupants of an immobilized car on a highspeed expressway and to the cold. Arresting the uncle and thus removing their protection and yet leaving the children exposed to these hazards

was an unjustifiable intrusion on the children's personal security.

*Id.*, p. 387.

A far different set of circumstances faced Ms. Wood and Officer Ostrander when they parted company. I believe that the clear holding of *White* (and the few cases that cite it) is that an entirely different result would have obtained had the abandoned persons in *White* been adults, and the area at issue a lighted street close to two business establishments. To conclude otherwise is to extend the protections of the Civil Rights Act of 1871, and the United States Constitution, to a full panoply of state tort claims against law officers, a consequence never before proposed by any other Federal Appellate Court.

I commend Judge John F. Kilkenny's dissenting opinion (Senior Ninth Circuit Judge, sitting by designation) in *White* to those interested in an extended analysis of why it was that the judgment of the lower court in *White*, dismissing that action, should have been affirmed and why it is that a police officer in 1984 could not reasonably have known of the *White* case, let alone guess its impact on the situation he faced.