Kathy HILLIARD, Plaintiff-Appellee,

v.

CITY AND COUNTY OF DENVER;
Denver Police Department,
Defendants,

and

Captain Michael O'Neill; Sergeant Anthony Iacovetta; Sergeant Mary Beth Klee; Officer Sherry Manning, Defendants–Appellants.

No. 89–1316.

United States Court of Appeals,
Tenth Circuit.

April 24, 1991.

Jeffrey N. Herren of Jeffrey N. Herren, P.C., Lakewood, Colo., for plaintiff-appellee.

Theodore S. Halaby (Robert M. Liechty with him, on the brief) of Halaby and McCrea, Denver, Colo., for defendants-appellants.

Before TACHA, EBEL, Circuit Judges, and JOHNSON,* District Judge.

TACHA, Circuit Judge.

This case is an appeal by defendant police officers from the denial of their motion for summary judgment based on qualified immunity. Because we find that the existence of a constitutional right, allegedly infringed here by defendants' actions, was not clearly established at the time of the incident, we reverse.

The material facts of this case are not in dispute. Plaintiff was a passenger in an automobile driven by her male companion which was involved in a minor traffic accident. The defendants investigated the accident and arrested the plaintiff's companion for investigation of driving under the influence of alcohol. He was taken into custody by the defendants and removed from the scene. The defendants at the same time determined that the plaintiff was too intoxicated to drive and ordered her not to do so. The car in which the plaintiff had been riding was impounded, and the plaintiff was left by the defendants in what the district court has termed a high crime area. After unsuccessfully attempting to telephone for help from a nearby convenience store, the plaintiff returned to

* Honorable Alan B. Johnson, District Judge, United States District Court for the District of Wyoming, sitting by designation.

her vehicle. There she was robbed and sexually assaulted by a third person, not a party to this appeal. She was found later the next morning, stripped naked, bleeding and barely conscious.

The plaintiff brought suit under 42 U.S.C. § 1983 (1988) and state tort law. She alleged that her constitutional rights to life, liberty, travel and personal integrity had been violated, and that, specifically, the defendants' failure to take her into protective custody pursuant to Colorado's emergency commitment statute, Colo.Rev.Stat. § 25–1–310 (1989), had given rise to this constitutional violation.

The defendants moved to dismiss, arguing that the law controlling their actions was not clearly established, and that they therefore had qualified immunity from suit.[1] The district court dismissed all of the plaintiff's pendent state law claims and also dismissed the allegations of general constitutional deprivation under section 1983.[2] The court, however, refused to dismiss the plaintiff's claim that because of the defendants' reckless disregard of the state emergency commitment statute her fourteenth amendment life and liberty interests had been invaded. At issue is whether the district court erred in finding that the defendants' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The district court's denial of a defendant's motion for summary judgment on qualified immunity grounds is an appealable decision within the meaning of 28 U.S.C. § 1291 (1988), *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 644 (10th Cir.1988), and is reviewed by this court *de novo*. *England v. Hendricks*, 880 F.2d 281, 283 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990).

In *Harlow*, the Supreme Court enunciated the standard by which claims of qualified immunity are to be evaluated. *Pueblo Neighborhood Health Centers*, 847 F.2d at 645. This standard provides that "[w]hen government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). In determining whether the law involved was clearly established, the court examines the law as it was at the time of the defendants' actions. *Id.*

It is the plaintiff's burden to convince the court that the law was clearly established. *Id.* (citing *Lutz v. Weld County School Dist.*, 784 F.2d 340, 342–43 (10th Cir.1986)). In doing so, the plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 & n. 2, 107 S.Ct. 3034, 3039 & n. 2, 97 L.Ed.2d 523 (1987)). Instead, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990). While the plaintiff need not show that the specific action at issue has previously been held unlawful, the alleged unlawfulness must be "apparent" in light of preexisting law. *Id.* (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039). The "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039). If the plaintiff is unable to demonstrate that the law allegedly violated was clearly established, the plaintiff is not allowed to proceed with the suit. *Id.*

---

1. Because both parties had submitted affidavits in support of their positions, the district court treated the motion as one for summary judgment.

2. The court preserved the plaintiff's claim against the City and County of Denver and the Denver Police Department pending further discovery. That claim is not involved in this appeal.

The rights identified by the plaintiff in her complaint are characterized as "the rights to life, liberty, travel and personal integrity secured by the Constitution and the laws of the United States...." Complaint at 3, 4. As noted above, while the district court dismissed the plaintiff's general claims based solely on section 1983, it did not dismiss her claim based on the defendants' alleged violation of the state emergency commitment statute. Because the plaintiff is basing her section 1983 claim on that statute, she must show that the statute itself or the laws authorizing its promulgation "create a cause of action for damages or provide the basis for an action brought under § 1983." *Davis v. Scherer,* 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984).

There is no contention here that the emergency commitment statute creates an implied cause of action for damages. Under Colorado law, legislative intent to provide for private recovery must be expressly set out in the statute. *Board of County Comm'rs v. Moreland,* 764 P.2d 812, 817 (Colo.1988). Plaintiff therefore, under *Davis,* must demonstrate that this state statute creates a constitutionally protected liberty interest which will serve as the basis for her section 1983 claim.

The district court identified the plaintiff's interest as a liberty interest in personal security protected by the fourteenth amendment, citing *Ingraham v. Wright,* 430 U.S. 651, 674–75, 97 S.Ct. 1401, 1414–15, 51 L.Ed.2d 711 (1977), and *Wood v. Ostrander,* 851 F.2d 1212, 1216 (9th Cir. 1988). Memorandum Opinion and Order at 11 n. 5. The defendants argue that the emergency commitment statute creates no such interest. Whether such a liberty interest exists under the facts of this case is an issue we do not reach. We hold, instead, that even if such a constitutional right exists, it was not clearly established in the law at the time of the defendants' actions thus entitling them to immunity from suit.

The Supreme Court has recognized a liberty interest in personal security in cases involving the fourth amendment right to be free from unreasonable searches and seizures, *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886); *see also Gouled v. United States,* 255 U.S. 298, 303–04, 41 S.Ct. 261, 262–63, 65 L.Ed. 647 (1921), and the eighth amendment right to be free from cruel and unusual punishment. *Youngberg v. Romeo,* 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982). The plaintiff here, however, does not look to these constitutional guarantees in support of her claim. Instead, she relies on *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), in which the Court held that junior high school students have a protected liberty interest in personal security derived from the due process clause of the fifth amendment, later incorporated into the fourteenth amendment. *See id.* at 672–73, 97 S.Ct. at 1413–14. We are unpersuaded, however, that the right recognized in *Ingraham* clearly applies to the facts of this case.

In *Kidd v. O'Neil,* 774 F.2d 1252 (4th Cir.1985), *overruled on other grounds, Justice v. Dennis,* 834 F.2d 380 (4th Cir. 1987), the Fourth Circuit noted that

> there has been a conceptual struggle ever since revival of § 1983 to identify the source of a general constitutional right to bodily security comparable to that given special protection in the fourth and eighth amendments and which could be asserted under § 1983 by persons other than arrest suspects and convicts.

*Id.* at 1258. The court noted the absurdity of a situation where

> constitutional protections ... exists [sic] only in those persons being taken into custody as criminal suspects and those already convicted of crime. On this view no one else in society has the protection, ... [particularly] those sufficiently virtuous or lucky not to have created any probable cause for their arrest and prosecution in the first place.

*Id.* The Fourth Circuit viewed *Ingraham* as clarifying the existence of an additional basis for the right to personal security, derived from the fifth and fourteenth

amendments, which at least applies to public school students. *Id.* at 1259.

■ While *Ingraham* may have clarified the law with regard to the derivation of the right recognized therein, it is less clear that *Ingraham's* right to personal security would apply where there is no element of state-imposed confinement or custody. Public school students, although not restricted to the same degree as arrestees, convicts and patients involuntarily committed to state mental hospitals, are similarly involved in an environment where the state has some lawful control over their liberty. Students are required by state law to attend school and thus are prevented by the state from voluntarily withdrawing from situations posing the risk of personal injury. The existence of a constitutional right to personal security as recognized in *Ingraham* may well depend on this element of legitimate state power over the person of the plaintiff. We note that in a case involving the fourth amendment, the Supreme Court has observed that "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Given the factual setting of *Ingraham,* we conclude it was not clearly established in 1988 that someone whose person was not under some degree of physical control by the state or who was not involved in a fourth amendment search or seizure would have a clearly established, constitutionally protected liberty interest.

■ We acknowledge the two circuit court opinions identified by the plaintiff which have found a right to personal security in instances where the plaintiffs were not legally constrained by the state from moving about at will. In *White v. Rochford,* 592 F.2d 381 (7th Cir.1979), the court found that children who had been left by themselves in a car beside a busy freeway when police arrested the driver had a due process right to "some degree of bodily integrity." *Id.* at 383 (citing *Ingraham,* 430 U.S. at 673, 97 S.Ct. at 1413). *White* was followed by *Wood v. Ostrander,* 851 F.2d 1212 (9th Cir.1988). In *Wood,* under facts strikingly similar to this case, the Ninth Circuit found that a passenger of an impounded vehicle, who had been sexually assaulted by a third party, could bring an action under section 1983 against the police officer who had left her in a high crime area at night after arresting her male companion. *Id.* at 1216. The court found that the defendant had allegedly acted in "callous disregard for Wood's physical security, a liberty interest." *Id.* (citing *Ingraham,* 430 U.S. at 674, 97 S.Ct. at 1414).

The existence of these two cases, however, does not "clearly establish" that *Ingraham's* personal security guarantee is viable in a noncustodial setting. Indeed, given the long list of cases cited in *Archie v. City of Racine,* 847 F.2d 1211, 1220–21 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989), and referred to by the Supreme Court in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), finding no constitutional duty on the part of state or local governments to rescue their citizens from invasion by private actors, *Archie,* 847 F.2d at 1220–21, the existence of two cases finding such a duty represents the essence of a legal question whose answer is not "clearly established."

Our opinion that the state of the law in 1988 in this area was not clear is buttressed by dicta in *DeShaney,* decided some six months after the incident involved in this case. The issue in *DeShaney* was whether a state or local government is required under the due process clause of the fourteenth amendment to protect its citizens from " 'private violence, or other mishaps not attributable to the conduct of its employees.' " *DeShaney,* 489 U.S. at 193–94, 109 S.Ct. at 1002 (citation omitted). Before going on to hold that there is no such fourteenth amendment requirement, the Court noted that

  [b]ecause of the inconsistent approaches taken by the lower courts in determining

when, if ever, the failure of a state or local governmental entity or its agents to provide an individual with adequate protective services constitutes a violation of the individual's due process rights, *see Archie v. City of Racine*, 847 F.2d 1211, 1220–1223, and n. 10 (CA 7 1988) (en banc) (collecting cases), cert. pending, No. 88–576, and the importance of the issue to the administration of state and local governments, we granted certiorari.

*Id.* This explicit acknowledgment by the Supreme Court regarding the state of the law governing any affirmative governmental duty to provide citizens with protection further convinces us that the law at issue here was not clearly established at the time of the defendants' actions.

█ The plaintiff's other allegations of violation of her constitutional rights to life, liberty and travel are too generalized to demonstrate that the defendants' alleged unlawful conduct was "apparent" in light of existing law. *See Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. The plaintiff here is simply identifying clearly established rights in the abstract and alleging that the defendants have violated them. Such broad, nonspecific allegations are insufficient to defeat the defendants' claim to qualified immunity. *See id.* at 639, 107 S.Ct. at 3039.

While we are appalled by the conduct of the defendants in this case, we note the danger of confusing the question of whether the plaintiff has state tort remedies with whether the plaintiff has stated a claim amounting to the deprivation of a constitutional right. The district court's opinion makes a persuasive case based on distinctions drawn from *Leake v. Cain*, 720 P.2d 152 (Colo.1986), that state tort remedies may exist under these facts. We are not persuaded, however, that the plaintiff here has articulated the deprivation of a constitutional right, much less a "clearly established" constitutional right.

The judgment of the United States District Court for the District of Colorado is therefore REVERSED, and the case is RE-MANDED to the district court for dismissal of the charges against the defendants.