197 F.Supp.2d 1247 (2001)
Gregory A. RUEGSEGGER and Darcey L. Ruegsegger, individually and as parents of Kacey L. Ruegsegger, Britney L. Ruegsegger, Brett A. Ruegsegger, and Brian T. Ray, Kacey L. Ruegsegger, individually, and Brian T. Ray, individually, Plaintiffs,
v.
THE JEFFERSON COUNTY BOARD OF COUNTY COMMISSIONERS, the Jefferson County Sheriff's Department, Sheriff John C. Stone, Individually and in his Official Capacity, Former Sheriff Ronald Beckham, Individually and in his Official Capacity, Deputy Sheriff Neil Gardner, Individually, Deputy Sheriff Paul Magor, Individually, Deputy Sheriff Paul Smoker, Individually, Deputy Sheriff Scott Taborsky, Individually, Deputy Sheriff Rick Searle, Individually, Deputy Sheriff Kevin Walker, Individually, John Hicks, Individually, Mark M. Miller, Individually, T. Williams, Individually, Mike Guerra, Individually, Philip Lebeda, Individually, and John Does (1 through 10), and Jane Does (1 through 10), Defendants.
No. CIV.00-B-806.
United States District Court, D. Colorado.
November 27, 2001.
*1248 *1249 *1250 *1251 Robert A. Schuetze, Schuetze & Gordon, LLP, Boulder, CO, Miles C. Cortez, Jr., Avi Sue Rocklin, Cortez, Macaulay, Bernhardt & Schuetze, LLC, Denver, CO, for Plaintiffs.
J. Andrew Nathan, Andrew J. Fisher, Bernard Roland Woessner, Nathan, Bremer, Dumm & Myers, PC, Denver, CO, William A. Tuthill, III, Lily Wallman Oeffler, Jefferson County Government Center, County Attorney's Office, Golden, CO, Alan Kaminsky, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Defendants.

MEMORANDUM OPINION and ORDER
BABCOCK, Chief Judge.
Defendants Jefferson County Board of County Commissioners (Board), Jefferson County Sheriff's Department (Sheriff's Department) (collectively, Municipal Defendants), Sheriff John C. Stone, Former Sheriff Ronald Beckham, Deputy Sheriff Neil Gardner, Deputy Sheriff Paul Magor, Deputy Sheriff Paul Smoker, Deputy Sheriff Scott Taborsky, Deputy Sheriff Rick Searle, Deputy Sheriff Kevin Walker, John Hicks, Mark M. Miller, T. Williams, Mike Guerra, and Philip Lebeda, move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss all claims brought by Plaintiffs Gregory A. Ruegsegger and Darcey L. Ruegsegger, Parents of Kacey L. Ruegsegger, Britney L. Ruegsegger, Brett A. Ruegsegger, and Brian T. Ray, Kacey L. Ruegsegger and Brian T. Ray. After consideration of the motion, briefs, arguments of counsel, and for the following reasons, I grant the motion.

I.

Facts

A. General Allegations
The following facts are alleged in Plaintiffs' Second Amended Complaint (Complaint). During the morning of April 20, 1999, Plaintiff Kacey L. Ruegsegger, a Columbine High School student, was shot and seriously injured in the Columbine High School library (Library), C/O ¶ 20, by fellow students Dylan Klebold and/or Eric Harris. C/O ¶ 78. The attack, apparently planned for more than a year, involved complex preparations, including construction of bombs. See C/O ¶ 31. Harris' and Klebold's actions resulted in the deaths of twelve students and one teacher, and serious physical injuries to at least twenty-three others, including Kacey Ruegsegger. Id. at ¶ 27.

B. Sheriff Defendants
Sheriff Stone has served as the Sheriff of Jefferson County, Colorado since January 1999. C/O ¶ 4. Sheriff Beckham was *1252 the Sheriff at all material times prior to January 1999. Id. at ¶ 5.
Plaintiffs allege that in February 1998 the Sheriff's Department apprehended Harris and Klebold for breaking into a van to steal tools. C/O ¶ 29. The two were prosecuted by the Jefferson County District Attorney, and placed in a Jefferson County juvenile offender diversion program on March 28, 1998. Id. The diversion program prohibited Harris and Klebold from possessing weapons and from being involved in any other criminal activity. Id. at ¶ 42.
On March 18, 1998, shortly before Harris and Klebold were placed in the diversion program, Deputy Miller received a complaint from Randall Brown, a Jefferson County citizen, that Harris had made repeated threats against the life of his son, Brooks Brown, also a Columbine student. C/O ¶ 31. According to Mr. Brown, Harris talked often about making pipe bombs and killing people and that Klebold knew of Harris' bomb-making activity. Id. During their meeting, Mr. Brown gave Deputy Miller a printout of information contained on Harris' Web site. These pages contained: 1) death threats; 2) a description of a pipe bomb detonated by the pair; 3) detailed descriptions of multiple pipe bombs built by Harris and Klebold; 4) explicit threats to shoot and kill people; 5) a reference to killing unidentified people using a sawed-off shotgun; 6) threats to "go to some downtown area in some big ... city and blow up and shoot everything I can;" and 7) threats to rig up and detonate explosives and shoot numerous people. Id.
After meeting with Mr. Brown, Deputy Miller completed a report, attached the Web site printout, and submitted it to his supervisor, Sgt. Lebeda. C/O ¶¶ 71-72. Deputy Miller's report, including the Web site printout, was forwarded to Deputy Gardner, id. at ¶ 33, assigned full-time to Columbine High School as a student resource officer. C/O ¶ 50. Deputy Gardner's job duties as school resource officer included contact and communication with students and school staff and awareness of law enforcement issues and student safety. Id.
Deputy Hicks, who also received a copy of Deputy Miller's report, met with Mr. and Mrs. Brown and bomb squad deputies, including Deputy Guerra, who discussed the reports with the Browns. C/O ¶ 36.
Deputies Healy and Williams who were aware of the Browns' report and the contents of the Web site were also assigned investigative duties concerning Harris' and Klebold's activities. C/O ¶ 37.
Prior to April 20, 1999, Harris added the following information to the Web site on "three different information panels":

 Hobbies: Preparing' for the big April 20!
 You'll all be sorry that day.
 Occupation: Senior at CHS and the rest is still
 unpublished.
 Personal Quote: when in doubt, pull it out. (computers)
 ____shut up and shoot itquit
 whining, it's just a flesh wound ____
 Kill Em AALLLL!!!!

C/O ¶ 43. The Complaint does not contain the date this information was added or if the statements were made together or separately.
At some point after the meeting between Deputy Hicks and the Browns, initial steps were taken to prepare and obtain a search warrant in connection with Harris' activities. C/O ¶ 38. Ultimately, the search warrant application was halted by "someone in a position of authority in the Sheriff's Department." Id. At approximately the same time, all follow-up on the Brown's complaint "apparently ceased." Id. at ¶ 39. Plaintiffs allege that investigation of the Browns' report was deliberately aborted by someone in authority in the Sheriff's Department. C/O ¶ 41.
*1253 After the investigation was discontinued without the knowledge of the Browns, Deputy Hicks failed to return numerous phone calls to him from Mr. and Mrs. Brown. Mrs. Brown was told by a person within the Sheriff's Department not to call any more. C/O ¶ 40.
Plaintiffs allege that the involved members of the Sheriff's Department consciously and deliberately failed to: 1) investigate Mr. Brown's allegations; 2) monitor Harris' and Klebold's activities; and 3) charge Harris and Klebold for violating the terms of the diversion program. C/O ¶ 44.

C. Columbine High School Attack
At approximately 11:17 a.m. on April 20, 1999, Harris and Klebold approached Columbine High School carrying a shotgun and various home-made explosive devices. Harris also carried a 10-shot Hi-Point model 995 carbine rifle, while Klebold carried an Intratec TEC DC-9 semiautomatic pistol. C/O ¶ 20. As they neared the school, the pair began shooting students outside the building, killing two and wounding approximately seven others. Id. at ¶ 21.
Notified of the shots, Deputy Gardner drove his vehicle onto the grass a short distance from the southwest entrance doors. Harris and Klebold were positioned on the walkway leading to the southwest entrance doors. C/O ¶ 22. Deputies Gardner and Smoker exchanged shots with Harris and Klebold. As these Deputies took cover, Harris and Klebold walked through the doors into the school. Id.
Allegedly, the Sheriff's Department cleared its main communications channel for the Columbine emergency and routed all other radio traffic to secondary radio channels. Id. at ¶ 61. This allowed Deputy Garner to take command and to direct the actions of other Deputy Sheriffs at the scene. This arrangement also permitted Sheriff Stone "and others in command" to communicate with the deputy sheriffs at and en route to the school, and to monitor and receive information about the 911 calls being received. Id.
Either simultaneously or shortly after Harris and Klebold entered the school, Deputies Taborsky, Magor, Searle, and Walker arrived at the school. The Deputy Sheriff Defendants decided and/or received instructions from their supervisors to remain outside the school building, id. at ¶ 23, based on the decision to designate the situation as a hostage situation and "secure the perimeter" of the school. Id. at ¶ 62.
At about the same time, members of the Denver SWAT team arrived at the school. The SWAT team, experienced, trained, and equipped to handle emergency situations, was prepared to pursue Harris and Klebold into the school. However, the Defendants instructed the SWAT team to remain outside the school. Id. at ¶ 24.
Upon entering the school, Harris and Klebold fired on students and teachers, wounding several, including teacher Patti Nielson. C/O ¶ 63. After being shot, Ms. Nielson fled down a hallway to the Library where students, including Kacey Ruegsegger, were studying. See C/O ¶ 64. Harris and Klebold walked down the hallway in the opposite direction from the Library toward the administrative area near the front of the school, shooting and throwing small homemade explosives as they walked. Id.
Once inside the Library, Ms. Nielson called 911. Allegedly, the 911 operator, an employee and/or representative of the Sheriff's Department, C/O ¶ 130, routed, or should have routed, Ms. Nielson's information and cry for help to the deputy sheriffs on scene, Sheriff Stone, and to other unknown deputy sheriffs and employees *1254 responding to the emergency. C/O ¶ 65.
Allegedly, during the 4½ minute phone call, Ms. Nielson informed the 911 operator that she was in the Library, had been "hit," that a student standing near her in the hallway was also "hit," and that the killers were in the hallway. C/O ¶¶ 71-72. The 911 operator could hear Harris' and Klebold's gunfire in the hallway over the telephone. C/O ¶ 66. The 911 operator responded by stating:
We've got help on the way ma`am. We have paramedics, we have fire, we have police on route. We have police on the scene. Keep everyone low to the floor. Try and keep as many people down as you can.
C/O ¶¶ 67, 69.
Plaintiffs allege that Kacey Ruegsegger understood the 911 operator's instructions, conveyed by Ms. Nielson, to mean that if she stayed down, law enforcement would arrive to rescue her. In reliance on the instructions, Kacey Ruegsegger remained inside the Library and did not avail herself of the open exterior Library door. See C/O ¶ 70.
The deputy sheriffs were positioned a short distance outside the open exterior Library door. C/O ¶ 71. According to Plaintiffs, an unidentified law enforcement official attempted to enter the school, but was told to remain outside. Id. The Complaint does not state the identify or status of the person who told this law enforcement official to remain outside. Id.
After Ms. Nielson called 911 but before Harris and Klebold entered the Library, Deputy Smoker exchanged gunfire with Harris and Klebold from outside the school but also did not enter the building. C/O ¶ 71.
After entering the Library, Harris and Klebold fired shots at the students, killing some and wounding others. See C/O ¶ 73. Harris and Klebold then went to a window in the Library and fired shots towards the deputy sheriffs and other law enforcement officers. Deputy Gardner and Deputy Walker returned fire but made no other response. Id. at ¶ 74. Harris and Klebold then resumed their attack on the students, including Kacey Ruegsegger. Id. at ¶ 75.
After shooting and taunting the students in the Library for 7½ minutes, Harris and Klebold left the Library. Those students able to walk then made their way out of the Library through the open exterior door. C/O ¶ 76.
The Complaint states that despite their own observations, the reports they received from fleeing students and numerous 911 calls from students and teachers inside the school the Defendants designated the events as a "hostage situation" as defined by the Jefferson County Sheriff's Department's Manual. C/O ¶¶ 53, 60, 62.
Allegedly, Defendants portrayed the events at Columbine as a "hostage situation," despite their being no "genuine basis" for this designation either during or after the shootings, to conceal that it was a "high risk situation." C/O ¶ 56. To the contrary, according to Plaintiffs it was clear to Defendants that Harris and Klebold were engaging in "nothing other than the murdering and maiming of students and other human targets." Id. at ¶ 57. Throughout Harris' and Klebold's rampage, they gave no indication that there were any conditions or circumstances, such as meeting any demands, that could induce the pair to stop their violent attack. Id. at ¶ 59.
According to Plaintiffs, although there was "plenty of time to exit the Library and/or the deputy sheriffs had plenty to time to enter the Library," see C/O ¶ 72, the Deputy Sheriff Defendants never provided the assistance promised by the 911 operator. See C/O ¶¶ 62, 77. Rather, they maintained the "secure perimeter" response *1255 by preventing the Denver SWAT team or any other potential rescuers from entering the school building. See id. at 77.

II.

Claims

Claim One
42 U.S.C. § 1983 Substantive Due Process Right to Life, Liberty and Personal SecurityState Created Danger Against Defendants Stone, Gardner, Magor, Smoker, Taborsky, Searle, Walker, and John/Jane Does in their Individual Capacities.

Claim Two
42 U.S.C. § 1983 Substantive Due Process Right to Life, Liberty and Personal SecuritySpecial Relationship Against Defendants Stone, Gardner, Magor, Smoker, Taborsky, Searle, Walker, and John/Jane Does in their Individual Capacities.

Claim Three
42 U.S.C. § 1983 Substantive Due Process Right to Life, Liberty and Personal SecurityFailure to Remedy Subordinates' Deprivations of Constitutional RightsAgainst Defendants Stone and John/Jane Does in their Individual Capacities.

Claim Four
42 U.S.C. § 1983 Substantive Due Process Right to Life, Liberty and Personal SecurityState Created Danger and/or Special Relationship Arising From Failure to InvestigateAgainst Defendants Stone, Beckham, Hicks, Miller, T.Williams, Guerra, Lebeda, and John/Jane Does in their Individual Capacities.

Claim Five
42 U.S.C. § 1983 Municipal Liability Arising from Acts of Policymaker Sheriff Stone in Official CapacityDeliberate Indifference of Policymaker to Deprivation of Civil Rights Relating to Failure to ActAgainst Defendants The Board of County Commissioners of the County of Jefferson, Colorado, and the Sheriff's Department of Jefferson County, Colorado.

Claim Six
42 U.S.C. § 1983 Municipal Liability Arising from Acts of Policymaker Sheriff Stone and Former Sheriff Beckham in their Official CapacityDeliberate Indifference of Policymaker to Deprivation of Civil Rights Relating to Failure to InvestigateAgainst Defendants The Board of County Commissioners of the County of Jefferson, Colorado, and the Sheriff's Department of Jefferson County, Colorado.

Claim Seven
42 U.S.C. § 1983 Municipal Liability Arising form Acts of Policymaker Sheriff Stone and Former Sheriff Beckham in Official CapacityDeliberate Indifference of Policymaker to Deprivation of Civil Rights Relating to Failure to Investigate-Against Defendants The Board of County Commissioners of the County of Jefferson, Colorado, and the Sheriff's Department of Jefferson County, Colorado.

Claim Eight
42 U.S.C. § 1983 Municipal Liability Arising form Acts of Policymaker Sheriff Stone in his Official CapacityPolicymaker's Failure to Prevent Witnessed Constitutional DeprivationsAgainst Defendants The Board of County Commissioners of the County of Jefferson, Colorado, and the Sheriff's Department of Jefferson County, Colorado.

Claim Nine
Violation of the Colorado Constitution, Art. II, §§ 6, 25Against Defendants Stone, Beckham, Gardner, Magor, Smoker, Taborsky, Searle, Walker, and John/Jane Does in their Individual Capacities.

*1256 Claim Ten

Willful and Wanton Conduct Arising from Acts and Omissions on April 20, 1999Against Defendants Stone, Gardner, Magor, Smoker, Taborsky, Searle, Walker, and John/Jane Does in their Individual Capacities.

Claim Eleven
Willful and Wanton Conduct Arising From Acts and Omissions prior to April 20, 1999Against Defendants Stone, Beckham, Hicks, Miller, T. Williams, Guerra, Lebeda, and John/Jane Does in their Individual Capacities.
All Defendants move, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss the federal claims for failure to state claims upon which relief can be granted. Further, the individual Defendants, accepting as true Plaintiffs' well pleaded facts, assert entitlement to qualified immunity from suit as to the § 1983 claims. They also seek dismissal of Claims Nine, Ten, and Eleven as barred by the Colorado Governmental Immunity Act (CGIA), § 24-10-101, et seq.

III.

Fed.R.Civ.P. 12(b)(6)
Under Rule 12(b)(6), I may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pleaded facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. Id. I accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party. See Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir.1998). All reasonable inferences must be construed in the plaintiff's favor. See Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir.1998). Materials attached to a complaint and incorporated into it may be considered without converting the Rule 12(b)(6) motion to one of summary judgment. Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir.1991).

IV.

Qualified Immunity
The individual Sheriff Defendants maintain they are entitled to qualified immunity from Claims One, Two, Three and Four because the contours of the pertinent law were not clearly established on April 20, 1999.
The basic principles of qualified immunity are well settled. The purpose of a qualified immunity defense under § 1983 is to limit the deleterious effects that the risks of civil liability would otherwise have on government operations at all levels, federal, state, and local. See Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Discretionary decisions by government actors inevitably impact the lives of private individuals, sometimes with harmful effects. Moreover, such decisions are inescapably imperfect. Especially in the context of police work, decisions must be made in an atmosphere of great uncertainty. Holding police officers liable in hindsight for every injurious consequence of their actions would paralyze the functions of law enforcement. See Tangwall v. Stuckey, 135 F.3d 510, 520 (7th Cir.1998); Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991). Qualified immunity thus allows officials *1257 the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
Qualified immunity under § 1983 shields officials from civil liability unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The linchpin of qualified immunity is objective reasonableness. Anderson, 483 U.S. at 639, 107 S.Ct. 3034. So long as the officer's actions, viewed from the perspective of the officer at the time, can be seen within the range of reasonableness, then no liability will attach. See id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2153, 150 L.Ed.2d 272 (2001) (emphasis added).
Important to this reasonableness inquiry is whether the rights alleged to have been violated were clearly established at the time of the challenged actions. Harlow, 457 U.S. at 818, 102 S.Ct. 2727. If the law supporting the allegedly violated rights was not clearly established, then immunity must lie. Anderson, 483 U.S. at 640, 107 S.Ct. 3034; Tarantino v. Baker, 825 F.2d 772, 774 (4th Cir.1987). Where the law is clearly established, and where no reasonable officer could believe he was acting in accordance with it, qualified immunity will not attach. The purpose of this doctrine is to ensure that police officers and other government actors have notice of the extent of constitutional restrictions on their behavior. Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Thus, qualified immunity prevents officials from being blindsided.
In a § 1983 suit for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. See Saucier, 533 U.S. 194, 199-201, 121 S.Ct. 2151, 2155-56 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. As a result, the Supreme Court has stressed "how critical [it is] to resolv[e] immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).
In Siegert v. Gilley, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Supreme Court clarified the appropriate framework for reviewing qualified immunity from § 1983 substantive due process claims. Under Siegert, I must first determine whether Plaintiff "has asserted a violation of a constitutional right at all." See id. at 232, 111 S.Ct. 1789. If Plaintiff has asserted the violation of a constitutional right, then I determine whether that right was clearly established so that reasonable officials in Defendants' situation would have understood their conduct violated *1258 that right. See Liebson v. New Mexico Corrections Dept., 73 F.3d 274, 276 (10th Cir.1996); Martinez v. Mafchir, 35 F.3d 1486, 1490 (10th Cir.1994).
Following the Siegert framework, I must first decide whether Plaintiffs have properly asserted the violation of constitutional rights in Claims One, Two, Three and Four.

V.

Claims

A. 42 U.S.C. § 1983 Claims against the Individual Defendants

1. Claim One-42 U.S.C. § 1983 Substantive Due Process Right to Life, Liberty and Personal Security State Created Danger Against Defendants Stone, Gardner, Magor, Smoker, Taborsky, Searle, Walker, and John/Jane Does in their Individual Capacities.
Sheriff Sone and Deputy Sheriffs Gardner, Magor, Smoker, Taborsky, Searle, Walker (responding Sheriff Defendants) move to dismiss Claim One in which Plaintiffs alleged that these Defendants' alleged improper responses to the Columbine attack and lack of rescue efforts created or enhanced the danger faced by Plaintiff Kacey Ruegsegger, thus violating her constitutional rights. See, e.g. C/O ¶¶ 22-24, 28, 62, 65, 67-69, 71, 73-74, 77. For the following reasons, I grant the motion.
In the companion case, Schnurr, et al. v. Board of County Commissioners of Jefferson, et al., Civil Case No. 00-B-790, I concluded that Plaintiffs had not met the requisite factors set out in Uhlrig v. Harder, 64 F.3d 567 (10th Cir.1995). For the reasons set out in Schnurr, I conclude in this case that these Plaintiffs have not satisfied all five Uhlrig factors. Thus, the responding Sheriff Defendants are entitled to dismissal of Claim One.

2. Claim TwoDeprivation of Constitutional Right to Life, Liberty and Personal Security under 42 U.S.C. § 1983Special Relationship All Plaintiffs against the Deputy Sheriffs in their individual capacities
Plaintiffs contend, based on the 911 call, the responding Sheriff Defendants restrained Kacey Ruegsegger from leaving the Library by instructing the persons in the Library to stay in the Library and await help. Therefore, according to Plaintiffs, pursuant to DeShaney, the responding Sheriff Defendants stood in a "special relationship" with Kacey Ruegsegger giving rise to the constitutional duty to protect and care for her. See DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200, 109 S.Ct. 998, 103 L.Ed.2d 249. I disagree.
In Schnurr, I held as a matter of law that neither the 911 operator's communications nor the Defendants' expressions of intent to help give rise to a special relationship as contemplated by the United States Supreme Court. Based on essentially identical allegations, for the reasons stated in Schnurr, I conclude that: 1) the responding Sheriff Defendants were not in a special relationship with Kacey Ruegsegger; and 2) the alleged actions of the responding Sheriff Defendants are not shocking in the constitutional substantive due process sense. Thus, the responding Sheriff Defendants are entitled to dismissal of Claim Two.

*1259 3. Claim Three42 U.S.C. § 1983 Substantive Due Process Right to Life, Liberty and Personal SecurityFailure to Remedy Subordinates' Deprivations of Constitutional RightsAgainst Defendants Stone and John/Jane Does in their Individual Capacities
The proper test for holding a supervisor liable for the unconstitutional conduct of subordinates under section 1983 requires allegations of personal direction or of actual knowledge and acquiescence in conduct alleged to have violated the constitutional rights of a citizen. Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir.1992) cert. denied, 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). See also Rizzo v. Goode, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (supervisor liability requires an "affirmative link [between the supervisor and the subordinate] ... showing [the supervisor's] authorization or approval of such misconduct"); McClelland v. Facteau, 610 F.2d 693, 696 (10th Cir.1979) (same).
Plaintiffs allege that Sheriff Stone issued "command and/or supervisory directives causing, and/or knowingly acquiescing in commanded personnel's ... deprivation of Kacey Ruegsegger's constitutional rights...." C/O ¶ 97. Thus, the first Woodward element is met.
Based on the analysis of Claims One, Two, and Four (see below), Plaintiffs have not made an initial showing of an underlying constitutional violation on the part of the responding Sheriff Defendants. Thus, Plaintiffs have not met the second essential element of a supervisory liability claim. See Woodward, 977 F.2d at 1400. Sheriff Stone is entitled to dismissal of Claim Three.

4. Claim Four-42 U.S.C. § 1983 Substantive Due Process Right to Life, Liberty and Personal Security State Created Danger and/or Special Relationship Arising From Failure to InvestigateAgainst Defendants Stone, Beckham, Hicks, Miller, T. Williams, Guerra, Lebeda, and John/Jane Does in their Individual Capacities
Deputy Sheriffs Beckham, Hicks, Miller, T.Williams, Guerra, Lebeda, and Sheriff Stone, (investigating Sheriff Defendants), move to dismiss Claim Four in which Plaintiffs assert these Defendants were in a special relationship with Kacey Ruegsegger and/or, created or enhanced the danger faced by her based on alleged inadequate investigative efforts. For the following reasons, I grant the motion.

a. State created or enhanced danger
In a companion case, Castaldo, et al. v. Jefferson County Sheriff John C. Stone, et al., Civil Case No. 00-B-1611, I concluded that Plaintiffs failed to meet the requisite factors set out in Uhlrig v. Harder, 64 F.3d 567 (10th Cir.1995). For the reasons set out in Castaldo, I conclude that the Plaintiffs' allegations do not satisfy all five Uhlrig factors. Thus, the investigating Sheriff Defendants are entitled to dismissal of Claim Four.

b. Special Relationship
The special-relationship doctrine applies in situations where the state imposes limitations upon an individual's freedom to act on his or her own behalf. See DeShaney, 489 U.S. at 200, 109 S.Ct. 998; City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (duty to provide medical care to injured suspects in police custody); Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28(1982) (duty *1260 to protect involuntarily committed mental patients from harm by themselves and others); Liebson, 73 F.3d at 276 (librarian who was sexually assaulted while employed in a prison failed to show existence of special relationship because employment was voluntary). "The affirmative duty to protect arises ... from the limitation which it has imposed on [a person's] freedom to act on his own behalf." DeShaney, 489 U.S. at 200, 109 S.Ct. 998; Seamons v. Snow, 84 F.3d 1226, 1235-36 (10th Cir. 1996), rev'd, in part, on other grounds, 206 F.3d 1021 (10th Cir.2000).
Plaintiffs do not allege that Kacey Ruegsegger or her assailants were in custody or restrained in any manner by the investigating Sheriff Defendants. Thus, as a matter of law no special relationship existed upon which a duty to protect Kacey Ruegsegger arose. Moreover, Plaintiffs' Response Brief does not address this issue. Thus, Plaintiffs are deemed to have abandoned this portion of Claim Four. The investigating Sheriff Defendants are entitled to dismissal of Claim Four.

B. 42 U.S.C. § 1983 Claims against Municipal Defendants

1. Claim Five42 U.S.C. § 1983 Municipal Liability Arising from Acts of Policymaker Sheriff Stone in his Official CapacityDeliberate Indifference of Policymaker to Deprivation of Civil Rights Relating to Failure to ActAgainst Defendants The Board of County Commissioners of the County of Jefferson, Colorado, and the Sheriff's Department of Jefferson County, Colorado.
Plaintiffs allege that the Municipal Defendants are liable under § 1983 for Sheriff Stone's acts on April 20, 1999 made in his official capacity as final policymaker in law enforcement matters for the Board and the Sheriff's Department. Claim Five arises from the lack of rescue attempts despite assurances that help was on the way.
In Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court enunciated the rule for imposing liability on a governmental entity:
a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.
Id. at 695, 98 S.Ct. 2018. The policy need not be formal or written. Id. at 691, 98 S.Ct. 2018. See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
A single act of an employee may be imposed on a local governmental entity if the employee possesses final authority to establish policy with respect to the challenged action. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 736-38, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107(1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); Ware v. Unified Sch. Dist. No. 492, 902 F.2d 815, 817 (10th Cir.1990). Therefore, a local governmental entity such as the Board and the Sheriff's Department may be held liable for decisions made by officials who have authority under state law to speak as final decisionmakers on the particular issue. See Jett, 491 U.S. at 737, 109 S.Ct. 2702.
It is undisputed that Sheriff Stone was a final policymaker in law enforcement *1261 matters for Jefferson County, represented by the Board, and for the Sheriff's Department. See C/O ¶ 115. Liability does not attach to the governmental entity pursuant to § 1983 for the acts of its employees, including those with final authority, unless a plaintiff can show: 1) that a municipal employee committed a constitutional violation; and 2) a municipal policy or custom was the moving force behind the constitutional deprivation. Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1317 (10th Cir.1998). The policy need not be formal or written. Id. at 691, 98 S.Ct. 2018. See also Adickes, 398 U.S. at 167-68, 90 S.Ct. 1598. Proving moving force requires showing a "direct causal link between the action and deprivation of federal rights." Lopez v. LeMaster, 172 F.3d 756, 763 (10th Cir.1999).

a. Constitutional Violation
Plaintiffs have not made the requisite predicate showing of an underlying constitutional violation as to Claims One, Two, Three, and Four. See § V(A)(1-4). Therefore, Plaintiffs cannot meet this element. Assuming, however, a constitutional violation, I assess the second element also.

b. Moving Force
A governmental entity or its policy makers may be liable pursuant to § 1983 if the entity's policies or customs are the cause or the "moving force" behind the underlying constitutional deprivation. See Myers, 151 F.3d at 1317. A governmental entity "`is only liable when it can be fairly said that the city itself is the wrongdoer.'" Collins v. City of Harker Heights, Tex., 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).
Myers illustrated this concept in the context of allegations of the use of excessive force by police officers in responding to a domestic violence incident. The Myers Court held:
the plaintiffs' failure to train claims, like their basic excessive force claim against the individual officers, requires a predicate showing that the officers did in fact use excessive force....
Myers, 151 F.3d at 1317. See also Trigalet v. City of Tulsa, 239 F.3d 1150, 1156 (10th Cir.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 40, 151 L.Ed.2d 13 (2001). It is only when the "execution of a government's policy or custom ... inflicts the injury" that the governmental entity or its policy makers may be held liable under § 1983. Monell, 436 U.S. at 694, 98 S.Ct. 2018.
Here, Harris and Klebold were the "moving force" behind Plaintiffs' injuries. Plaintiffs' allegations that their injuries could have been avoided if there were different policies in place or adequate training do not state a viable claim.

2. Claim Six42 U.S.C. § 1983Municipal Liability Arising from Acts of Policymaker Sheriff Stone and Former Sheriff Beckham in their Official CapacityDeliberate Indifference of Policymaker to Deprivation of Civil Rights Relating to Failure to InvestigateAgainst Defendants The Board of County Commissioners of the County of Jefferson, Colorado, and the Sheriff's Department of Jefferson County, Colorado.
Plaintiffs allege that the Municipal Defendants are liable under § 1983 for the acts of Sheriff Stone and Former Sheriff Beckham, in their official capacity as final policymakers in law enforcement matters for the Board and the Sheriff's Department. Claim Six arises from Sheriff Stone's and Former Sheriff Beckham's alleged failures to follow through and investigate citizen complaints on or before April 20, 1999. See C/O ¶ 121.
*1262 Plaintiffs have not made the requisite predicate showing of an underlying constitutional violation as to Claim Four against the investigating Sheriff Defendants. See § V(A)(4). Therefore, Plaintiffs have failed to state a claim upon which relief can be granted.

3. Claim Seven42 U.S.C. § 1983 Municipal Liability Arising from Acts of Policymaker Sheriff Stone and Former Sheriff Beckham in Official CapacityDeliberate Indifference of Policymaker to Deprivation of Civil Rights Relating to Failure to Train 911 Operators and/or failure to implement 911 Policy
Plaintiffs allege that the Municipal Defendants are liable under § 1983 for the acts of Sheriff Stone, in his official capacity as final policymaker in law enforcement matters for the Board and the Sheriff's Department arising from the alleged failures to: 1) adequately train Jefferson County's 911 operators; and/or 2) implement a policy with respect to Jefferson County's emergency response 911 services. See C/O ¶ 128.

a. Failure to Train
Plaintiffs claim that the inadequacy of the 911 operator's training was apparent because the 911 operator: 1) conveyed incorrect information to Ms. Nielson concerning the arrival of law enforcement and other rescue personnel to rescue the Library occupants; 2) directed the Library occupants to stay down low to the floor without questioning whether the students could escape or hide. See Response Brief, p. 26.
In City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court recognized municipal liability under § 1983 for failure to adequately train law enforcement officials. Id. at 379, 109 S.Ct. 1197. The City of Canton Court reiterated Monell's rule for imposing liability on a governmental entity including the requirement that an underlying constitutional violation must be demonstrated. Id.
As stated, Plaintiffs have not made the requisite predicate showing of an underlying constitutional violation as to Claims One, Two, Three and Four against the responding Sheriff Defendants. Therefore, the Municipal Defendants are entitled to dismissal of Claim Seven.

4. Claim Eight42 U.S.C. § 1983 Municipal Liability Arising from Acts of Policymaker Sheriff Stone in his Official CapacityPolicymaker's Failure to Prevent Witnessed Constitutional Deprivations Against Defendants The Board of County Commissioners of the County of Jefferson, Colorado, and the Sheriff's Department of Jefferson County, Colorado
Plaintiffs allege that the Municipal Defendants are liable under § 1983 for Sheriff Stone's acts, in his official capacity as final policymaker in law enforcement matters for the Board and the Sheriff's Department arising from his failure and refusal to correct or remedy his subordinates' wrongful disregard of the risk on April 20, 1999 that Kacey Ruegsegger would be shot and injured, despite assurances of help. See C/O ¶ 144. Allegedly, this failure constituted the approval of the Municipal Defendants as a matter of municipal policy or custom.
As set out above, Plaintiffs have not met the requisite predicate showing of an underlying constitutional violation concerning: 1) Sheriff Stone's alleged failure to correct or remedy the responding Sheriff Defendants' wrongful acts; or 2) that the responding Sheriff Defendants violated Plaintiffs' constitutional rights. Thus, the *1263 Municipal Defendants are entitled to Rule 12(b)(6) dismissal of Claim Eight.

VI.

Qualified ImmunityClaims One, Two, Three and Four
As a matter of law, qualified immunity is not available as a defense to municipal liability. See Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). As to the individual Defendants, Plaintiffs have not cleared the initial hurdle of asserting constitutional violations alleged in Claims One, Two, Three and Four. Qualified immunity provides an additional basis for dismissal of these claims.
I turn then to the question whether these constitutional rights were clearly established as of April 20, 1999 so that reasonable police officers in the individual Sheriff Defendants' position would have understood that their actions were in violation of those rights. See Siegert, 500 U.S. at 232, 111 S.Ct. 1789; Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir.1998).
In determining whether the law involved was clearly established, I examine the law as it was at the time of defendants' actions. Hilliard v. City & County of Denver, 930 F.2d 1516, 1518 (10th Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991). "[T]he plaintiff need not show that the specific action at issue has previously been held unlawful. [He need only show] that the alleged unlawfulness [was] apparent in light of preexisting law." Id. Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuit courts must have found the law to be as the plaintiff maintains. See Medina, 960 F.2d at 1498; Morfin v. Albuquerque Public Schools, 906 F.2d 1434 (10th Cir.1990).
It is a plaintiff's burden to convince the court that the law was clearly established. In doing so, plaintiff cannot simply identify a clearly established right in the abstract and allege that a defendant has violated it. Instead, a plaintiff must make a particularized showing that the "contours" of the right are sufficiently clear that a reasonable state actor would understand that what he is doing violates that right. See Patrick v. Miller, 953 F.2d 1240, 1243 (10th Cir.1992) citing Anderson, 483 U.S. at 640, 107 S.Ct. 3034. Although a "precise factual correlation between the then-existing law and the case at-hand is not required," see Patrick, 953 F.2d at 1249, the alleged unlawfulness must be "apparent" in light of preexisting law. Anderson, 483 U.S. at 640, 107 S.Ct. 3034. If a plaintiff is unable to demonstrate that the law allegedly violated was clearly established, the plaintiff is not allowed to proceed with the suit. Hilliard, 930 F.2d at 1518. Thus, I must examine whether it was clearly established in April 1999 within a sufficiently analogous factual setting that the particular conduct of the individual Sheriff Defendants was grounds for a § 1983 violation based on the allegations in Claims One, Two, Three and Four.

A. Claim One § 1983Deprivation of Substantive Due Process Rights State-Created Danger Doctrine Qualified Immunity Defense and Claim Two § 1983Deprivation of Substantive Due Process Rights Special-Relationship Doctrine Qualified Immunity Defense
Pursuant to the allegations in Claims One and Two, Plaintiffs must make a particularized showing that the "contours" of the danger-creation and special relationship jurisprudence, respectively, were clearly established on April 20, 1999 within a sufficiently analogous factual setting so that the responding Sheriff Defendants *1264 had notice that their conduct violated Kacey Ruegsegger's constitutional rights.
In Schnurr, I concluded that Graham, Uhlrig, Armijo, and Sutton provide reasoned support for the conclusion that the state created/enhanced danger theory does not fit the horrific and unprecedented circumstances facing the responding Sheriff Defendants on April 20, 1999. Here, as in Schnurr, there is no authority for Plaintiffs' contention that Kacey Ruegsegger was in custody for purpose of DeShaney based on the 911 call. In addition, Bryson v. City of Edmond, 905 F.2d 1386 (10th Cir.1990) undermines Plaintiffs' position. Therefore, assuming Claims One and Two assert violations of substantive due process, qualified immunity would attach.

B. Claim Three-42 U.S.C. § 1983 -Deprivation of Right to Life, Liberty, and Personal Security-Supervisor Liability-Failure to Remedy Subordinates'/Colleagues' Deprivations of Constitutional Rights-Against Command Defendants in their Individual CapacitiesQualified Immunity Defense
It has been the law of the Tenth Circuit since 1992 that supervisory liability under § 1983 requires "allegations of personal direction or actual knowledge and acquiescence" in conduct alleged to have violated the constitutional rights of a citizen. See Woodward, 977 F.2d at 1400 (§ 1983 claim against supervising police officers arising out of alleged sexual harassment claim). Supervisory liability for personal direction or actual knowledge and acquiescence in conduct violating constitutional rights were clearly established in the abstract as of April 20, 1999. Plaintiffs allege that Sheriff Stone "caus[ed], and/or knowingly acquiesc[ed] in commanded personnel's" deprivation of Kacey Ruegsegger's constitutional rights. See C/O ¶ 97. However, the rights allegedly violated here are said to flow from DeShaney's state-created danger and special relationship exceptions to its firm general rule. In the situation confronted by Sheriff Stone and those he supervised, immunity has attached because the contours of the rights allegedly violated were blurred and indistinct.

C. Claim Four42 U.S.C. § 1983 Substantive Due Process Right to Life, Liberty and Personal Security State Created Danger and/or Special Relationship Arising From Failure to InvestigateAgainst Defendants Stone, Beckham, Hicks, Miller, T.Williams, Guerra, Lebeda, and John/Jane Does in their Individual Capacities

1. State Created Danger
Cases addressing the "danger-creation" doctrine concern police responses to drastic and dramatic emergency situations, not police investigations. In response, Plaintiffs rely on Doe v. City Dept. of Social Servs., 649 F.2d 134 (2nd Cir.1981) for the proposition that government officials may be held liable under § 1983 for a failure to do what is required as well as for overt activity which is unlawful and harmful. This is undoubtedly true. Doe, however, concerned the actions of a social services agency in allegedly failing to supervise placement of a foster child. See also DeShaney Research fails to reveal any case authority involving the adequacy of a police investigation in the context of this § 1983 claim. Accordingly, the investigating Sheriffs are entitled to qualified immunity as to Claim Four addressing the danger creation doctrine.

2. Special Relationship
Research reveals that cases decided before April 20, 1999 addressing the "special relationship" doctrine in the context *1265 of claims for inadequate investigations concern, with few exceptions, schools, see Doe v. Hillsboro Indep. Sch. Dist., 81 F.3d 1395 (5th Cir.1996) or prosecuting attorneys acting as investigators. See Ying Jing Gan v. City of New York, 996 F.2d 522 (2nd Cir.1993); Barbera v. Smith, 836 F.2d 96 (2nd Cir.1987). The sole Circuit Court of Appeals opinion concerning a failure to investigate claim against police officers contains no qualified immunity analysis because the Court found no underlying constitutional violation. See Cheriee Gazette v. City of Pontiac, 41 F.3d 1061 (6th Cir.1994).
In light of the dearth of pertinent authority involving the adequacy of a police investigation in the context a special relationship claim, I conclude that the investigating Sheriffs are entitled to qualified immunity as to Claim Four.

VII.

State Law Claims

A. Claim Nine -Violation of the Colorado Constitution, Art. II, §§ 6, 25 Against Defendants Stone, Beckham, Gardner, Magor, Smoker, Taborsky, Searle, Walker, and John/ Jane Does in their Individual Capacities
Claim Nine is based on Article II, Sections 6 and 25 of the Colorado State Constitution. Article II, Section 6 states:
Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered with sale, denial or delay.
Id. Section 25 provides that "[n]o person shall be deprived of life, liberty or property, without due process of law." Id. at § 25.
Based on the law, analysis and conclusions set out in Claim Eleven in Castaldo, et al., the Sheriff Defendants, including Sheriff Stone, are entitled to dismissal of Claim Nine. See Board of County Comm'rs v. Sundheim, 926 P.2d 545, 550 (Colo.1996) (where there is an adequate remedy available, there is no actual or implied cause of action for money damages based on violation of the Colorado Constitution).
Plaintiffs contend, pursuant to Sundheim, if I dismiss their § 1983 claims, no adequate remedy would be available to them for the Defendants' alleged wrongs. Sundheim does not stand for the proposition that when the allegations of a complaint are insufficient to state a claim, a remedy pursuant to the Colorado Constitution is thereby created. As a matter of law, the § 1983 remedy remains adequate despite failure to state a viable § 1983 claim. In this context, "adequate remedy" is a term of art. Moreover, Plaintiffs do not cite and research fails to reveal any authority for this proposition.
In the alternative, the Sheriff Defendants contend Claim Nine is, in essence, a tort claim or could lie in tort. Because the CGIA bars any claim against a public entity for injuries that lie in tort or could lie in tort, see § 24-10-108, C.R.S. and Bertrand v. Board of County Comm'rs, 872 P.2d 223 (Colo.1994), according to the Sheriff Defendants, Claim Nine must be dismissed. This immunity is extended to public employees acting within the scope of their employment, provided their actions are not willful or wanton. § 24-10-118(2), C.R.S. I am not persuaded.
Constitutional claims are derived from rights created by a written constitution. In contrast, tort claims generally are based on common law principles developed through case authority. Thus, like a federal constitutional claim, a claim based on the Colorado Constitution does not lie in tort. Therefore, CGIA immunity does not *1266 attach to Claim Nine. Dismissal on CGIA grounds is not warranted.

B. Claim TenWillful and Wanton Conduct Arising from Acts and Omissions on April 20, 1999 Against Defendants Stone, Gardner, Magor, Smoker, Taborsky, Searle, Walker, and John/Jane Does in their Individual Capacities
The responding Sheriff Defendants and Sheriff Stone move to dismiss Claim Ten: 1) because it is barred by the Colorado Governmental Immunity Act (CGIA), Colo.Rev.Stat. § 24-10-103(4)(a); and 2) pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.
Based on the law, analysis and conclusions set out in Claim Four in Schnurr, et al., Civil Case No. 00-B-790, the responding Sheriff Defendants, including Sheriff Stone, are entitled to dismissal of Claim Ten.

C. Claim ElevenWillful and Wanton Conduct Arising from Acts and Omissions prior to April 20, 1999 Against Defendants Stone, Beckham, Hicks, Miller, T. Williams, Guerra, Lebeda, and John/Jane Does in their Individual Capacities
The investigating Sheriff Defendants and Sheriff Stone move to dismiss Claim Eleven on the grounds that: 1) it is barred by the Colorado Governmental Immunity Act (CGIA), Colo.Rev.Stat. § 24-10-103(4)(a); and 2) pursuant to Fed. R.Civ.P. 12(b)(6) Plaintiffs have failed to state a claim upon which relief can be granted.
Based on the law, analysis and conclusions set out in § V(A) concerning Claim One in Castaldo, et al., Civil Case No. 00-B-1611, the investigating Sheriff Defendants, including Sheriff Stone, are entitled to dismissal of Claim Eleven.
Accordingly, IT IS ORDERED that:
1. Claim One against Defendants Stone, Gardner, Magor, Smoker, Taborsky, Searle and Walker, in their individual capacities, is DISMISSED;
2. Claim Two against the Defendants Stone, Gardner, Magor, Smoker, Taborsky, Searle and Walker, in their individual capacities, is DISMISSED;
3. Claim Three against Defendant Stone, in his individual capacity, is DISMISSED;
4. Claim Four against Defendants Stone, Beckham, Hicks, Miller, T. Williams, Guerra and Lebeda, in their Individual Capacities, is DISMISSED;
5. Claim Five against Defendants The Board of County Commissioners of the County of Jefferson, Colorado and the Sheriff's Department of Jefferson County, Colorado is DISMISSED;
6. Claim Six against Defendants The Board of County Commissioners of the County of Jefferson, Colorado and the Sheriff's Department of Jefferson County, Colorado. is DISMISSED;
7. Claim Seven against Defendants The Board of County Commissioners of the County of Jefferson, Colorado and the Sheriff's Department of Jefferson County, Colorado. is DISMISSED; and
8. Claim Eight against Defendants The Board of County Commissioners of the County of Jefferson, Colorado and the Sheriff's Department of Jefferson County, Colorado. is DISMISSED;
9. Claim Nine against Defendants Stone, Beckham, Gardner, Magor, Smoker, Taborsky, Searle and Walker, in their individual capacities, is DISMISSED;
10. Claim Ten against Defendants Stone, Gardner, Magor, Smoker, Taborsky, Searle and Walker, in their individual capacities, is DISMISSED; and
*1267 11. Claim Eleven against Defendants Stone, Beckham, Hicks, Miller, T.Williams, Guerra, and Lebeda, in their individual Capacities, is DISMISSED.